MCMILLAN ET AL., APPELLANTS, *v.* BRUNE-HARPENAU-TORBECK BUILDERS, INC. ET AL., APPELLEES.

[Cite as McMillan *v.* Brune-Harpenau-Torbeck Builders, Inc. (1983), 8 Ohio St. 3d 3.]

(No. 82-1847—Decided November 23, 1983.)

*Messrs. Cohen, Todd, Kite & Stanford, Mr. Thomas H. Bergman* and *Mr. Paul A. Nemann,* for appellants.

*Mr. Henry G. Berlon,* for appellee Brune-Harpenau-Torbeck Builders, Inc.

*Mr. David P. Faulkner* and *Mr. Timothy P. Heather,* for appellee W. L. Harper Construction Company.

LOCHER, J. The issue presented in this case is whether privity of contract is a necessary element of an action in negligence brought by a vendee of real property against the builder-vendor. In overruling *Insurance Co.* v. *Bonnie Built Homes* (1980), 64 Ohio St. 2d 269 [18 O.O.3d 458], we hold today that privity of contract is not a necessary element of such an action.

In *Mitchem* v. *Johnson* (1966), 7 Ohio St. 2d 66 [36 O.O.2d 52], this court stated in paragraph three of the syllabus:

"A duty is imposed by law upon a builder-vendor of a real property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. If the violation of that duty proximately causes a defect hidden from revelation by an inspection reasonably available to the vendee, the vendor is answerable to the vendee for the resulting damages."

In *Mitchem,* this duty ran only to the immediate vendee. No sound policy reasons exist to prevent the extension of this duty to all subsequent vendees as well.

Appellees urge us to reaffirm *Bonnie Built Homes* as being based on time-tested real property principles. *Bonnie Built Homes* was decided primarily on the rationale that an elimination of the privity element would render the vendor an insurer for all defects. It was felt that the vendor should not be held liable for all defects, because of "unforeseen ramifications." (*Bonnie Built Homes,* quoting *Strathmore Riverside Villas* v. *Paver Dev. Corp.* [Fla. App. 1979], 369 So. 2d 971, 973.)

Today's holding does not render the vendor an insurer for all defects, however remote. Nor are "unforeseen ramifications" an important consideration. Rather, vendors of real property will be held liable for damages proximately caused by their negligence in constructing, maintaining, or repairing the property sold. The duty spelled out in *Mitchem* runs now to all vendees, both original and subsequent.

This standard of negligence will require vendees to prove the traditional negligence elements. The vendor is not to be held strictly liable for defects. Our holding establishes only the duty. Vendees still have the burden of proving the breach of that duty, proximate causation, and damages. As Justice William B. Brown pointed out in his dissenting opinion in *Bonnie Built Homes:*

"Surely, to hold that a subsequent vendee * * * can bring an action in negligence against a builder-vendor is not equivalent to holding that such

5

builder-vendor is an underwriter against economic loss not proximately caused by its negligence." (*Id.* at 272.)

The extension of the duty of care in the real property context follows the trend of strong legal precedent in the area of products liability. In *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St. 2d 227 [35 O.O.2d 404], this court ruled, *inter alia,* that privity of contract is not necessary for a successful products liability action in tort. Notwithstanding claims to the contrary, privity of contract is no more valid a requirement in the context of real property than it is in the area of consumer products. Each may have defects undetectable even after reasonable investigation by the buyer. In either context, *caveat emptor* must give way to the negligence standard of liability.

Improved workmanship and accountability are promoted by an expansion of the scope of the duty as well. Were privity to be maintained as a necessary element for suits against vendors, it is conceivable that "strawman" vendees would be utilized by vendors to escape potential liability. The imposition of a negligence standard properly shifts the burden of loss to the negligent vendors.

We agree with the court of appeals, however, that the concealment claim was properly dismissed by summary judgment. Appellants have failed to allege facts to support this claim in their complaint, thereby presenting no genuine issue of material fact.

For the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the trial court for a determination of the negligence claim.

*Judgment accordingly.*

CELEBREZZE, C.J., C. BROWN and J. P. CELEBREZZE, JJ., concur.

C. BROWN, J., concurs separately.

W. BROWN, J., concurs in the syllabus and judgment only.

SWEENEY and HOLMES, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. The only just result attainable in this case is the one reached in the superb analysis by Justice Locher eliminating privity of contract in a negligence action brought by a vendee of realty against the builder-vendor, thereby necessitating the overruling of the bad law and reasoning expressed recently in *Insurance Co.* v. *Bonnie Built Homes* (1980), 64 Ohio St. 2d 269 [18 O.O.3d 458]. The elimination of the privity of contract requirement places the syllabus law of this case in perfect harmony with products liability cases involving an action in tort based upon the theory of breach of implied warranty, whereby privity of contract is not required, as pronounced in *Iacono* v. *Anderson Concrete Corp.* (1975), 42 Ohio St. 2d 88

[71 O.O.2d 66], and *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227 [35 O.O.2d 404].

Our decision today is as long overdue as the 1916 decision in *MacPherson* v. *Buick Motor Co.* (1916), 217 N.Y. 382, 111 N.E. 1050, where the learned Judge Cardozo, writing for the court, in essence, held that privity of contract was not necessary for persons to recover for injuries resulting from a defectively manufactured wheel. This brings Ohio law finally within the first quarter of the twentieth century.

The arguments for requiring privity of contract for a negligence action against the builder-vendor involving realty but not requiring it for a negligence action involving personalty, result in hair splitting, creating distinctions without a difference, and ignoring reality.

The actual, unexpressed reason for proponents urging privity of contract as a necessary element in negligence actions involving realty is to create another roadblock for the plaintiff and to shield the wrongdoer from liability and responsibility to the ultimate victim who directly suffers a loss as a result of such tort.

Bad law no matter how recently created by this court, as in *Bonnie Built Homes, supra,* must be judicially eliminated as soon as possible in order to comport with our judicial oath of office "to administer justice without respect to persons." R.C. 3.23. In accordance with this oath we must continue, as we have in the past several years, to erase judicially much bad law that has accumulated over many years.

HOLMES, J., dissenting. In the much cited case of *Mitchem* v. *Johnson* (1966), 7 Ohio St. 2d 66 [36 O.O.2d 52], this court rejected the legal theory of implied warranty in the sale of a real-property structure by the builder-vendor, and adopted the standard that such structure be constructed in a reasonably efficient and workmanlike manner. Whether such ruling extended beyond the first vendee was not an issue, nor addressed, in *Mitchem;* however, the facts show that the action was fundamentally based upon the negligent performance of the builder-vendor and was brought by the original vendee. Therefore, I conclude that the syllabus law, and the discussion of the law within the case, had reference only to actions being available to the original purchaser of the structure.

Whatever might have been the intent of the court in *Mitchem* as to the breadth of the applicability of that holding, clarification came in the subsequent case of *Insurance Co.* v. *Bonnie Built Homes* (1980), 64 Ohio St. 2d 269 [18 O.O.3d 458]. In that case, the plaintiff insurance company had been subrogated to the claim of negligent construction of a home as against a builder-vendor as alleged by an owner subsequent to the original purchaser. The court was squarely presented with the question of "whether *Mitchem* is applicable when the builder-vendor's failure to construct the real-property structure in a workmanlike manner results in latent defects which are not discovered until the structure is in the hands of a subsequent vendee. In

other words, is a builder-vendor liable to an owner for the diminished value resulting from unworkmanlike construction in the absence of privity of contract? * * *'' *Id.* at 270. The court specifically answered this query by the syllabus of the case, which states:

"Privity of contract is a necessary element of an action brought by an owner of a real-property structure against the builder-vendor of the structure for damages proximately caused by unworkmanlike construction."

Supportive of such syllabus law, the majority of the court, speaking through Justice Paul W. Brown, discussed the inapplicability of prior products liability cases in which the court had held that privity of contract was not a necessary element of those causes of action, as follows, at page 270:

"Appellant cites *Iacono* v. *Anderson Concrete Co.* (1975), 42 Ohio St. 2d 88 [71 O.O.2d 66], and *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227 [35 O.O.2d 404], in support of its claim that privity of contract is not a necessary element in its cause of action. These two cases are inapposite. They are products liability cases based on breach of an implied warranty, an area of the law distinct from that involved here. In products liability cases, privity of contract is not necessary and a manufacturer is strictly liable for injuries caused by a defect in the product. In *Mitchem,* this court, at page 72, refused to apply the theory of implied warranty that it had adopted in *Lonzrick, supra,* to real-property construction cases."

Going right to the heart of the issue as to whether the duty of a builder-vendor should be extended beyond the purchaser with whom the builder-vendor had dealt, Justice Brown at pages 270-271 stated that:

"The duty of the builder-vendor to build a structure in a workmanlike manner is a duty arising out of the contract of sale and not out of a general duty owed to the public at large. *Mitchem,* at page 73. In the absence of privity the action must fail because there is no contractual basis upon which to determine the duty owed. This analysis was followed by the court below, and by other courts interpreting and applying *Mitchem.* See, *e.g., Tibbs* v. *National Homes Constr. Corp.* (1977), 52 Ohio App. 2d 281 [6 O.O.3d 300]; *Lloyd* v. *William Fannin Bldrs.* (1973), 40 Ohio App. 2d 507 [69 O.O.2d 444]; *Hubler* v. *Bachman* (1967), 12 Ohio Misc. 22 [41 O.O.2d 21]."

The pronouncements of the *Bonnie Built Homes* court were good law then. Nothing having occurred in this state which would change the socio-economic aspects of this area of law, *Bonnie Built Homes* is good law now as such would relate to actions brought by subsequent vendees for claims of diminished value of a structure due to unworkmanlike construction.

I am well aware that an increasing number of other state courts are embracing the broadened theory of available negligence actions by subsequent vendees for claimed defects, both in actions seeking damages for personal injuries and in actions seeking damages for diminished value. This case does not involve personal injury by a third party, which could well result in my reaching other conclusions. This case involves only the claim of diminished economic interest in the structure, and in this regard it is my position

8

that the law expressed in *Bonnie Built Homes* remains a more valid and reasonable balance of the interests of both the general public and the homebuilding industry. The opinion of the majority here moves Ohio law markedly in the direction of the builder-vendor being an insurer of the structure he builds — not only as to the original owner, but as to all subsequent owners.

The review and determination of what might be the appropriate law to be applied to the multitude of transactions between the various commercial interests and the general buying public, requires not only differing standards, but also a determination of the scope and reach of the applicability of such standards. Within this context, it should be realized that every purchase and sale has within it certain risks and certain corresponding obligations and duties. Routine sales of minor or everyday items in our lives involve minor decisions on the part of the buyer, and corresponding minor risks to the consumer. The courts have recognized that the risk involved in purchasing a small appliance is readily distinguishable from the risk involved in purchasing real estate, and have imposed different standards for parties engaged in those transactions. Accordingly, in *Mitchem, supra,* Judge Schneider, while recognizing that the builder-vendor did have a duty of reasonable care in the construction of the facility, and so applying the negligence standard rather than an implied warranty to these real estate transactions, stated, at pages 71-72:

"* * * [t]he purchase of real estate is invariably preceded by a lengthy period of inspection, consideration and negotiation. One does not purchase land under conditions in any way similar to the purchase of home permanents (*Rogers* v. *Toni Home Permanent Co.,* 167 Ohio St. 244 [4 O.O.2d 291]), cooking appliances (*Welsh* v. *Ledyard,* 167 Ohio St. 57 [4 O.O.2d 27]), soap (*Krupar* v. *Procter & Gamble Co.,* 160 Ohio St. 489 [52 O.O. 363]), or electric blankets (*Wood* v. *General Electric Co.,* 159 Ohio St. 273 [50 O.O. 286])."

Accordingly, the law in *Mitchem* resulted in the pronouncement of the *standard* to be applied in cases brought by the vendee against his builder-vendor.

The law in *Bonnie Built Homes* resulted in the pronouncement of the *scope* or extent of the applicability of the *Mitchem* standard by way of the court stating that the builder-vendor's duty did not extend to the general public, but only to the party with whom he contracted.

It is my view that this is a proper and reasonable application of the duty upon a builder-vendor in that his duty is to discuss and disclose all known elements of the site and its development with his contractee, the original purchaser. However, this duty should not be extended to all subsequent purchasers who might come forth from the general public. Quoting again from *Bonnie Built Homes* relative to this point, it was stated, at page 271, that:

"* * * A builder-vendor should not be required to act as an insurer for subsequent vendees. As the Court of Appeals for the Second District of Florida stated in *Strathmore* [*Riverside Villas* v. *Power Dev. Corp.* (Fla. App.

1979), 369 So. 2d 971], *supra,* at page 973: 'Many unforeseen ramifications could arise should we opt for a rule holding builders * * * liable to remote purchasers for the diminished value of a home allegedly caused by defects in construction. If this step is to be taken, then we believe it should be accomplished by the legislature rather than by this court.' "

To permit a subsequent vendee, many years and many times removed from the original home purchaser, to reach back to the original builder-vendor ignores the surrounding circumstances of the original as well as all of the intervening sales transactions. Intervening "as is" sales contracts, waivers, or disclaimers in such transactions, records of which have long since been lost or discarded, might not be brought to the attention of a court in a much later review of a homeowner's claim. If subsequent purchasers desire to protect themselves from economic loss occasioned by some improper or below standard construction, then through the process of bargaining they may acquire either specific warranties or specifically broad homeowners insurance coverage from their immediate vendor, which gives prior vendors a reasonable degree of finality to their realty transactions.

This court, albeit a different composition thereof, has, in *Bonnie Built Homes,* recently addressed the issue raised herein. For this court to jettison this well reasoned law, which requires privity of contract in cases such as this, would contravene the best public interest in that it would subject builders and developers to negligence actions from remote subsequent purchasers *ad infinitum.* This open-ended liability would necessarily be passed on to the consumer in the form of much higher prices for homes. There must be a point where builders and developers know that they will no longer be subject to allegations of negligent construction which occasions claimed diminished value of the structure. If the liability of a builder-vendor is to go beyond the initial vendee in such instances, then any extension of liability, along with the scope and terms of such extension, and appropriate statute of limitations, should be pronounced by the General Assembly, not by this court.

SWEENEY, J., concurs in the foregoing dissenting opinion.