564 So.2d 274 (1990)
Yvonne R. KOVACH, Appellant,
v.
William C. McLELLAN, et al., Appellees.
No. 89-131.
District Court of Appeal of Florida, Fifth District.
July 26, 1990.
*275 Richard A. Manzo and Roy A. Praver of Manzo & Praver, P.A., Titusville, for appellant.
Stanley R. Andrews, Titusville, for appellees.
PETERSON, Judge.
Yvonne R. Kovach appeals the summary final judgment of foreclosure in favor of appellees, William and Nancy McLellan, and the dismissal with prejudice of her amended counterclaim. We vacate the summary final judgment and reverse the dismissal with prejudice of the counterclaim.
The McLellans alleged non-payment of installments and failure to insure the security as grounds for their action to foreclose a mortgage granted by Kovach. Kovach generally denied the allegations and affirmatively alleged waiver, estoppel, fraud, and failure of consideration. In her counterclaim, Kovach sought damages for fraud and to set aside the mortgage on the grounds of fraud, misrepresentation, and want or failure of consideration. Kovach alleged that she purchased a single-family residence from the McLellans' daughter and son-in-law, the Aldermans; that at the time of purchase she delivered a note and mortgage on the property in favor of the McLellans; that the McLellans had participated in improper construction of improvements on the property; that two years and three months prior to this purchase the McLellans sold the residence to the Aldermans and accepted a purchase money mortgage that was replaced by Kovach's mortgage; and that, sometime after the purchase, Kovach discovered latent defects that rendered the property uninhabitable.
The McLellans' motion to dismiss Kovach's first counterclaim was heard on November 3, 1988. The trial court dismissed the counterclaim, allowing Kovach until November 14, 1988, to file an amendment. The order was filed on November 22, 1988, and dated by handwritten entry that is difficult to decipher but appears to be "the 18th day of March, 1988," although, logically, it was probably dated November 18, 1988. Kovach then served an amended counterclaim and third party claim on November 30, 1988. The McLellans countered with a motion to dismiss, alleging that the amended counterclaim was tardy, failed to state a cause of action, and merely repeated the allegations contained in the first counterclaim. A hearing on this motion on December 14, 1988, resulted in an order dismissing the amended counterclaim with prejudice. This time, the order was signed and filed on December 14. The order does not state any grounds for the dismissal with prejudice.[1]
*276 The absence of stated grounds for the dismissal with prejudice is especially critical in this case because of the confusion of dates. It appears that the first order allowing amendment was not signed or filed until after the time it allowed for filing the amended counterclaim.[2] Additionally, dismissal with prejudice is contrary to the rule of liberality in the amending of pleadings so as to reach the merits of the case. Fla.R.Civ.P. 1.190; and see, e.g., Downtown Investments, Ltd. v. Segall, 551 So.2d 561 (Fla. 3d DCA 1989); Dingess v. Fla. Aircraft Sales & Leasing, Inc., 442 So.2d 431 (Fla. 5th DCA 1983). Unless it appears that the privilege to amend has been abused or that the complaint is clearly untenable, it is an abuse of discretion to dismiss a complaint with prejudice. See generally Hamide v. State Dep't of Corrections, 548 So.2d 877 (Fla. 1st DCA 1989); Countryside Christian Center, Inc. v. City of Clearwater, 542 So.2d 1037 (Fla. 2d DCA 1989); Crews v. Ellis, 531 So.2d 1372 (Fla. 1st DCA 1988); Delia & Wilson, Inc. v. Wilson, 448 So.2d 621 (Fla. 4th DCA 1984). This rule continues even where an opportunity to amend was previously granted. See, e.g., Crews, supra; Gerentine v. Coastal Security Systems, 529 So.2d 1191 (Fla. 5th DCA 1988). Therefore, where a party may be able to allege additional facts, as in Crews, or where the ultimate facts alleged may support relief based upon another theory, such as in Roger Rankin Enterprises v. Green, 433 So.2d 1248 (Fla. 3d DCA 1983), dismissal with prejudice is an abuse of discretion. Since we are unable to determine the grounds for the dismissal with prejudice and since we cannot determine with certainty that Kovach is unable to allege further facts or an alternative theory, we must set aside the order dismissing with prejudice Kovach's amended counterclaim.
While the motion for summary judgment of foreclosure is not affected by the confusion of dates and while all procedural rules were followed, the counterclaim included a count to set aside the mortgage, and that counterclaim was improperly dismissed with prejudice. Therefore, the judgment must be vacated until resolution of the counterclaim. Because of the unique nature of the position of the McLellans as lender and former owner, we feel obliged to guide the trial court in its subsequent proceedings.
Kovach opposed the motion for summary judgment through her affirmative defenses, alleging without detail waiver, estoppel, fraud, and failure of consideration. She attempted to support those defenses through factual contentions set forth in an affidavit in opposition to the McLellans' motion for summary judgment. The affidavit indicated that the McLellans took an active role in the sale of the property; that they agreed to allow Kovach to assume a mortgage held by them on the property;[3] that the Aldermans were their daughter and son-in-law; that they knew Kovach would use the property as her residence; that when they previously owned the property they performed numerous repairs and construction on the property in a negligent and unworkmanlike manner without compliance with applicable building codes; that the repairs and defects were of a nature which could not have been reasonably discovered by Kovach; and that the McLellans failed to disclose numerous defects. Attached to the affidavit were copies of a *277 September 8, 1988, notice from Brevard County to vacate the premises until the septic system was connected, and a typed letter from an individual. This individual, alleged in Kovach's affidavit to be a licensed contractor, indicated that, in his casual inspection of the premises, he had found many structural irregularities and code violations and that he was certain normal inspections such as plumbing, electrical, roofing, termite, and heating had not been done. The identity of the person who would have made these inspections and when they should have been performed are not disclosed. Also conspicuously absent from the affidavit is a detailed description of any particular latent defect, except for the septic system which, upon correction, would have eliminated the Brevard County vacate order, or any statement that the McLellans repaired or participated in the construction of the septic system requiring correction or were aware of a problem connected with it. Both of the attachments to Kovach's affidavit indicate they were obtained after the foreclosure was initiated and one year and eight months after Kovach granted the mortgage.
The McLellans' liability for nondisclosure of defects as individual lender and former owner of the property presents an issue that we have been unable to locate in previous appellate decisions. Kovach and the McLellans are in privity as lender and borrower, but they are not in privity in their respective capacities as buyer and remote seller. Because of the absence of privity between them as buyer and seller, the rule of law pronounced in Johnson v. Davis, 480 So.2d 625 (Fla. 1985), does not apply. In Johnson, our supreme court held that, when the seller of a used home knows of defects materially affecting the value of property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer. Johnson may have application to Kovach and the Aldermans as current buyer and seller who are in privity with each other, but not to Kovach and the McLellans as current purchaser/former seller. Johnson did not involve lender liability for failure to disclose, and we are unwilling to expand the rule established in that case in the absence of any affirmative representations of any fiduciary, special, or longstanding relationship between Kovach and the McLellans as lenders.
Also absent from Kovach's answer and affidavit is any allegation that she relied upon an affirmative representation or expertise of the McLellans to her detriment. S.H. Investment & Development v. Kincaid, 495 So.2d 768 (Fla. 5th DCA 1986), rev. denied, 504 So.2d 767 (Fla. 1987), is cited by Kovach to establish the essential elements for an action based upon fraud. The first element, which requires a false statement concerning a material fact, is absent in the instant case. Ramel v. Chasebrook Construction, 135 So.2d 876 (Fla. 2d DCA 1961), is cited for the rule that nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact. However, that case involved a construction company's failure to advise its buyer that the home built by the company for its customer was erected without pilings on muck when affirmative representations were made that the house was well constructed.
Kovach's affidavit opposing the motion for summary judgment shows at most that the McLellans' participation in the Aldermans' sale to Kovach was that the McLellans "agreed to allow [Kovach] to assume [the] mortgage." This allegation and the other sketchy recitations in the affidavit are not enough to support her affirmative defenses. To hold a lender responsible for damages such as these, there must be allegations of ultimate facts that would indicate active participation in the sale of the residence or the existence of a special relationship between the lender and the borrower. We are cognizant of the special relationship that exists here between the seller and the lender, but Kovach knew of this relationship at the time she purchased the house and granted the mortgage. No allegation was made that the McLellans conspired with the Aldermans to defraud her.
*278 The summary final judgment in foreclosure is vacated, and the dismissal of the counterclaim with prejudice is reversed with instructions to allow an amendment to the counterclaim.
Judgment VACATED; REVERSED and REMANDED.
DANIEL, C.J., concurs.
W. SHARP, J., concurs with result, dissents in rationale with opinion.
W. SHARP, Judge, concurring in result and dissenting, as to rationale.
I respectfully disagree with the majority opinion, not only because I find the facts in this case so extreme as to "shock my judicial conscience" (we appellate judges do have them), but also because I think it construes the thrust of Johnson v. Davis, 480 So.2d 625 (Fla. 1985) much too narrowly. Further, I think Kovach raised a valid affirmative defense in her counterclaim of negligent construction (although not specifically so labelled), which was probably a compulsory counterclaim[1] in this mortgage foreclosure suit because the McLellans participated in the construction of the residence Kovach had the misfortune to purchase, and knew about its latent defects prior to Kovach's entering into the transactions.
The McLellans filed a mortgage foreclosure action against Kovach. Kovach pled fraud and failure of consideration due to a botched construction job performed on the house by the McLellans and their daughter and son-in-law (the Aldermans). Kovach also filed an amended counterclaim against the McLellans seeking to set aside the mortgage and claiming damages for fraud. The trial court ruled the defenses and counterclaim were legally insufficient because Kovach could neither allege she purchased the house from the McLellans, nor could she allege any affirmative misrepresentation they made to her concerning the house prior to her purchasing it from the Aldermans and executing the mortgage the McLellans. Apparently the majority opinion echos this limited view, and the result after remand will probably not alter the result in the trial court.
In my view, lack of a buyer-seller relationship with the McLellans and absence of an affirmative misrepresentation on their part are not fatal defects in this case. Kovach alleged that the McLellans sold the subject property to the Aldermans in 1984; the Aldermans and the McLellans participated in building the residence; and all four knew it had been built in violation of applicable building codes. The violations were so extreme that the residence is now uninhabitable, and it has been condemned by local authorities.
Kovach also alleged that the defects in the house were not discoverable by a reasonable inspection. For example, the kitchen sink, toilets, and bathroom sink drain into an improperly installed septic system. The bathtub drains directly into the ground. Other substantial defects were alleged to exist with regard to electrical wiring, roof installation, and the heating system. A letter from a building inspector attached to the amended counterclaim opines that $35,000 to $40,000 will be required to put the residence in acceptable condition.
The pleadings also established that in 1986 Kovach signed a contract to buy the residence from the Aldermans. She is a single parent with children and intended to use the structure as her residence. The purchase price was $69,000, but $35,000 was to be financed by the McLellans. The McLellans originally held a $38,000 purchase money mortgage from the Aldermans. In order to finance Kovach's purchase, the McLellans agreed to satisfy the Alderman mortgage and replace it with a mortgage from Kovach.
Neither the Aldermans nor the McLellans told Kovach about the serious, latent construction defects of the house before she closed the purchase and executed the mortgage in favor of the McLellans. Shortly after Kovach moved into the house, she experienced a series of problems requiring repairs.
*279 The extent of the house problems was eventually discovered. Kovach was financially unable to make the needed repairs and meet the mortgage payments. She was ordered out of the house, she defaulted on the mortgage, and this suit was commenced. Foreclosure was delayed for a time by Kovach's personal bankruptcy but the federal stay has now been lifted.
Although Kovach did not specifically label as one of her causes of action negligent construction, the facts pled and her request for damages disclose a viable cause of action, which make entry of final summary judgment against her erroneous. She alleged the McLellans participated in the construction of this disastrous home. Although she could be categorized as a "remote purchaser," the lack of privity is no defense in such cases. See Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978) (remote purchaser held able to sue contractor who built home for a prior owner, for negligent construction contrary to building code); Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981) (remote purchasers of condominium units allowed to sue builder for negligent construction and recover their economic losses).
As was observed by our sister court in Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979), the issue is not privity, but foreseeability. If a person negligently constructs a residence the fact that the identity of the person or family who eventually resides there is unknown, is no defense. It is clearly foreseeable someone will live there and will be damaged.[2]
However, a stronger and more clearly articulated defense and cause of action in this case is fraud and deceit. Without question fraud and deceit can be valid defenses in a mortgage foreclosure suit, where as here, the McLellans are not holders in due course.[3] Harper, James and Gray, Law of Torts, Vol. II, § 7.15 (2d ed). Recission and damages were both pled here as defenses and as grounds for seeking affirmative relief.
The trial judge, as well as the majority opinion, find Kovach's allegations legally insufficient because Kovach purchased the residence from the Aldermans rather than the McLellans. The majority holding is that under such circumstances the McLellans owed Kovach no duty to disclose the latent material defects in the house she was buying and which they were undertaking to finance. I disagree. Privity has never been required by the tort or equitable defense of fraud and deceit. Prosser, Law of Torts (4th ed.), p. 686. Focus on that relationship misconceives the essence of the tort as applied to failure to disclose.
Failure to disclose, like nonfeasance as opposed to misfeasance, was traditionally restricted by the courts to special situations or relationships. However, the exceptions appear to be rapidly consuming the rule.[4] One exception, which I think applies here, is the nondisclosure of a material fact by one party to a transaction "where the other party does not have equal opportunity to become apprised of the fact." 27 Fla.Jur.2d Fraud and Deceit § 38. I would construe the "transaction" in this case as encompassing the McLellans' financing, which was essential to enable Kovach to buy the property.
But even if the McLellans are viewed as not having privity with Kovach because they were not the sellers of the property, the lack of privity is not fatal. Kovach alleged the McLellans knew of the defects and participated in their creation, and they *280 stood to profit from the transaction by obtaining a fresh mortgagor to replace their kin, from whom they could receive mortgage payments for a grossly defective structure.[5]
In Johnson, our supreme court adopted the rule that nondisclosure of a latent material defect is an actionable fraud in a suit brought by a buyer against the seller of real estate. It said:
The law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made when even elementary fair conduct demands it.
Id. at 628. Although Johnson involved a seller and a buyer of a residence, I do not think the court intended to limit the rule of law to those facts.
Other Florida courts have extended the rule in Johnson to real estate brokers. See Young v. Johnson, 538 So.2d 1387 (Fla. 2d DCA 1989); Rayner v. Wise Realty Company of Tallahassee, 504 So.2d 1361 (Fla. 1st DCA 1987). The Third District, which originally wrote the Johnson opinion, later affirmed by the supreme court, specifically noted that the duty to disclose might well be applicable to real estate brokers, builders, and developers beyond the immediate seller. Johnson v. Davis, 449 So.2d 344, 350, n. 1 (Fla. 3d DCA 1984). The same result has been reached in cases decided in other jurisdictions.[6]
In Daniel v. Coastal Bonded Title Co., 539 So.2d 567 (Fla. 5th DCA 1989), we held that a cause of action in fraud had been pled against a title agent and his company for failure to disclose to a buyer easements not of record, but known to the insurer prior to the closing, when the title insurance company stood to benefit from the closing going forward. Similarly, in Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla. 2d DCA 1961), contra other grounds, Johnson, the court held that a prima facie cause of action in fraud for nondisclosure had been established by a remote purchaser against a builder under facts similar to this case. The defect in Ramel was the soil condition (muck) which caused the residence to settle and crack.
In Ramel, the defective lot was sold directly to a builder (Chasebrook Construction Company, Inc.), who built a house on it "for speculation." Chasebrook (the developer and seller of the builder) held a purchase money mortgage. When the builder sold the house to the plaintiff, the developer's mortgage was paid off out of the proceeds of the sale. The presidents of both corporations told the plaintiff the house was "well built," but neither disclosed to the plaintiff that the patio, pool and house had been built on a muck foundation, nor did they make any affirmative representations concerning the foundation.
The Ramel court held that under these circumstances both the developer and builder committed "affirmative," actionable fraud, despite lack of privity between the developer and home-buyer. However, the court went on to say that these facts also constituted "actionable nondisclosure":
In the absence of a fiduciary relationship, mere nondisclosure of all material facts in an arm's length transaction is ordinarily not actionable misrepresentation unless some artifice or trick has been employed to prevent the representee from making further independent inquiry. One exception to this rule is that nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact. We think such was the situation in the instant case. [citations omitted].
135 So.2d at 882.
Banks or financiers in positions like the McClellans have also been held liable and *281 answerable for failure to disclose material information which was unknown to a borrower that would have dissuaded the borrower from going into the transaction. In Barnett Bank of West Florida v. Hooper, 498 So.2d 923 (Fla. 1986), the bank suspected, but did not disclose, a check-kiting scheme engaged in by one of its depositors. In order to obtain more funds for the depositor it engaged in a 3-way conversation with the depositor and Hooper. Hooper executed a $90,000 note to the bank, and the funds were lent to the depositor. Hooper's funds were used to cover the bank's losses when the check-kite crashed. The court held the bank had a duty to disclose to Hooper its customer's precarious financial situation, since it was a material fact known to the bank, but not Hooper, and since the bank stood to gain from Hooper's loan to the depositor. The situation between the McLellans and Kovach is indistinguishable from the bank and Hooper.[7]
Section 551 of the Restatement of Torts provides:
(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable case to disclose the matter in question.
(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated.
* * * * * *
(e) [F]acts basic to the transaction if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the . .. other objective circumstances, would reasonably expect a disclosure of the facts.
The comments to (e) indicate that in order to create the duty to disclose, the information must be "basic," "going to the essence" of the transaction, and more than material.
In my view, the horrendously poor, jerryrigged construction of the home Kovach purchased meets the test of being "basic," since it went to the essence of the purpose of the transaction: obtaining a place fit for human habitation. The defects certainly were "material." The McLellans knew of the latent defects; they participated in creating the defects; they stood to benefit from the sale and acceptance of Kovach as mortgagor; their participation as mortgagees was essential to finance Kovach's purchase; and they had the opportunity to disclose the defects to Kovach prior to the closing, but did not do so. Under these alleged circumstances, I think the McLellans owed Kovach a duty to disclose and their failure to do so constituted actionable fraud and deceit. Dismissal of Kovach's defenses and counterclaim based on the pleadings was erroneous.
NOTES
[1] While no rules of civil procedure require that grounds be stated, it is better practice to do so. See City of Gainesville Code Enforcement Bd. v. Lewis, 536 So.2d 1148 (Fla. 1st DCA 1988); see also May v. Holley, 59 So.2d 636 (Fla. 1952) (when a pleading is attacked on several grounds, both on the merits and on jurisdictional or procedural grounds, dismissal without specifying the grounds relied on should be avoided, as it leaves the parties and the reviewing court entirely in the dark).
[2] The confusion could have been eliminated by adoption of the procedure practiced in some trial courts whereby judicial assistants indicate on an order the day of mailing or delivery of copies rather than simply noting the names of persons to whom copies were furnished.
[3] Kovach's statement that the McLellans allowed her to assume a purchase money mortgage granted by the Aldermans to the McLellans at the time of the prior purchase is misleading since Kovach actually granted to the McLellans a new note and mortgage for approximately the remaining balance of the Alderman mortgage but with a higher interest rate and an extended term.
[1] Fla.R.Civ.P. 1.170(a).
[2] The privity defense in these cases reminds me of Justice Musmanno's observations in a defamation case, Purcell v. Westinghouse Broadcasting Co., 411 Pa. 167, 191 A.2d 662 (Pa. 1963):

The defendant strenuously argues that there could have been no exercise of malice against the plaintiff because, it points out, no one connected with the radio station knew that plaintiff. But the man who recklessly throws a chair out of the fifth story does not need to know the person whom the chair eventually hits, in order to be held liable for the damage done to him.
[3] Vol. 5 UCC: Anderson § 3-101:55 (3d ed).
[4] Harper, James & Gray, Law of Torts, Vol. II, § 7.14 (2d ed.).
[5] See Prosser Law of Torts (4th ed.), p. 697 and cases.
[6] See Jenkins v. McCormick, 184 Kan. 842, 339 P.2d 8 (Kan. 1959) (builder held liable for failure to disclose defective floor to remote house purchaser); Lingsch v. Savage, 213 Cal. App.2d 729, 29 Cal. Rptr. 201 (Cal. 1st DCA 1963) (Relator held liable for failure to disclose extensive latent defects in building purchased by plaintiffs); Griffith v. Byers Construction Co. of Kansas, Inc., 212 Kan. 65, 510 P.2d 198 (Kan. 1973) (developer held liable to remote home purchaser for saline condition of soil which prohibited vegetation from growing).
[7] See also Richfield Bank & Trust Co. v. Sjogren, 309 Minn. 362, 244 N.W.2d 648 (Minn. 1976) (bank held potentially liable for not disclosing to financier who borrowed money from bank to put into bank's depositor-customer's business the fact that the depositor-customer was irretrievably insolvent, and the purpose of the transaction (to buy machinery from the depositor-customer) could not be achieved).