BLAKE et al., Appellants,

v.

JOHN DOE 1 et al.; Handke et al., Appellees.

[Cite as *Blake v. John Doe 1* (1993), 89 Ohio App.3d 130.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1469.

Decided June 29, 1993.

Wiles, Doucher, Van Buren & Boyle Co., and Bruce H. Burkholder, for appellants.

Ian H. Rodier, for appellees Harmut Handke and Margot Handke.

William J. Christensen, for C.R. Withem Enterprises, Inc.

Christopher T. Cline, for Steven E. Black.

Ulmer & Berne and Michael J. Hardesty, for Thomas and Cheryl Coffman.

Thompson, Hine & Flory and James A. Meaney, for King Thompson Realtors.

Steller, Magnuson & Barone and Jeffrey A. Auker, for Chicago Title.

---

DESHLER, Judge.

This is an appeal by plaintiffs, Brian R. Blake and Suzanne R. Blake, from a judgment of the Franklin County Court of Common Pleas dismissing their complaint upon motion by defendants, Harmut and Margot Handke, pursuant to Civ.R. 12(B)(6).

The facts of this case are primarily concerned with the history of appellants' home, a single-family residence built in 1959. The first occupants of the house were Harold and Grace Williams, who purchased it from the builder. During their ownership, the house eventually showed signs of settling, including cracks in the foundation, basement floor, and upstairs walls and ceiling. The Williamses hired an engineering firm to investigate the problem. After performing two test borings to determine soil consistency, the engineer concluded that the house was built upon unstable footing, including naturally compressible organic soils. The report concluded that further settling could not be ruled out, although it was possible that the soils in question had compacted to the point of stability. The report went on to propose some techniques of pouring concrete piers under the existing foundation to a sufficient depth to reach harder ground. This procedure would have entailed a substantial expense. The alternative solution involved minor patching as walls shifted, and continued monitoring for more serious structural instability.

The Williamses did not undertake any major work to stabilize the house and, in 1978, sold the house to the Handkes without advising them of the settling problems. After the Handkes became aware of the structural instability of the

house, they brought suit against the Williamses. During discovery proceedings, the Handkes became aware of the prior subsurface soil condition testing done by the Williamses. The Handkes also hired their own experts to conduct further inspections of the house. One of these inspections revealed that, in addition to being built on soft soils, at least part of the foundation footer was inadequately constructed.

The Handkes eventually accepted a settlement and dismissed their lawsuit against the Williamses. Thereafter, the Handkes appear to have undertaken no substantial measures to solidify or stabilize their home's foundation.

In 1986, the Handkes sold the property to Thomas and Cheryl Coffman. The Handkes did not inform the Coffmans of their previous problems with the house, of the unstable soil conditions, or of the lawsuit and resulting settlement with the Williamses. The Coffmans lived in the house approximately two years. Their deposition testimony in this case indicated that although the Coffmans did observe some existing cracks and misaligned doors in the house, they were never made aware that these conditions reflected any fundamental instability in the structure, or the potential for further deterioration.

The Coffmans sold the house to the Blakes, the plaintiffs and appellants herein, in 1988. The Blakes eventually recognized the extent and severity of the structural problems associated with the shifting foundation of the house as well as the extent to which the prior owners were aware of the problem and the past legal action brought by the Handkes against the Williamses. The Blakes filed this action on March 26, 1992 against the Williamses, Handkes and Coffmans as prior owners who had failed to disclose the defect and against the builder of the house as John Doe, for negligence in construction, and against various realtors and house inspectors involved in the Blakes' purchase of the house.

The Handkes moved to be dismissed from the case under Civ.R. 12(B)(6), because the Blakes' complaint failed to state a claim, with regard to the Handkes, for which relief could be granted. The trial court granted the motion based on the absence of privity between the Blakes and the Handkes, who therefore could not have been liable for any representations or nondisclosure on the part of the Coffmans which were relied upon by the Blakes in purchasing the house.

The Blakes have timely appealed, and bring the following assignments of error:

"I. It is error for the court to find that the Handkes are so far removed from the fraud/transaction that they had no duty to reveal the latent defects.

"II. It is error for the court to find that since the Handkes are not builder-vendors, privity of contract is still required to support a negligence claim against the Handkes by [the] Blakes.

"III. Because of the incorrect findings by the court, it is error for the court to find beyond a doubt that [the] Blakes can prove no set of facts which will entitle [the] Blakes to recover against [the] Handkes."

These three assignments of error represent three facets of the same legal issue, and will be discussed together.

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. A court must presume that all factual allegations contained in the complaint are true, making all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755.

The facts alleged in the complaint, with respect to the Handkes, are as follows: The Handkes purchased the home from the Williamses, and, having eventually learned of the latent defects, filed a lawsuit against the Williamses for nondisclosure of latent defects. Now fully apprised of the unstable soil conditions and resulting damage to the house, the Handkes sold the home to the Coffmans without revealing the defects. The Coffmans then sold the house to appellants without revealing the latent defects, possibly because they never became aware of them due to the Handkes' nondisclosure.

The issue before us is whether a purchaser of real estate can recover, under any applicable theory of law, from a prior owner who failed to disclose substantial latent defects *to an intervening owner,* who purchased the property from defendant in an arm's-length transaction and similarly resold it to the plaintiff.

 It is well settled in Ohio that a seller of real property must disclose substantial latent defects to his purchaser. *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642. "An action for fraud may be grounded upon failure to fully disclose facts of material nature where there exists a duty to speak." *Id.* at 178, 519 N.E.2d at 644. "[A] vendor has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection." *Id.*

 In the present case, the complaint alleges undisclosed defects in the form of unstable soil which has caused, and may well continue to cause, settling and shifting which compromise the structural integrity and therefore the value of the house. While some of the *effects* of this shifting may be discoverable through reasonable inspection, such as cracks in the wall and misaligned doors, the severity of the underlying unstable soil condition could not be discovered without greater expense and investigation than could reasonably be expected from a

potential purchaser. The subsoil conditions therefore constitute a latent defect which the Handkes had a duty to disclose to their immediate purchasers. The Handkes, however, were not a party to the conveyance from the Coffmans to appellants. If the fraudulent concealment alleged in the complaint is to accord appellants a cause of action against the Handkes, we must dispense with the requirement of privity: "As a general rule, if a plaintiff brings an action sounding in tort and bases his claim upon a theory of duty owed by a defendant as a result of contractual relations, he must be a party or privy to the contract." *Vistein v. Keeney* (1990), 71 Ohio App.3d 92, 106, 593 N.E.2d 52, 61.

Appellants argue that the case of *McMillan v. Brune–Harpenau–Torbeck Builders, Inc.* (1983), 8 Ohio St.3d 3, 8 OBR 73, 455 N.E.2d 1276, stands for the proposition that privity should no longer be a requirement in this type of action. In *McMillan*, the Supreme Court held that subsequent purchasers were not barred by an absence of privity from bringing an action against the builder for negligent construction. *Id.* *McMillan*, however, relies upon the builder's duty to build the structure in a workmanlike manner and exercise reasonable care. *Id.* at 4, 8 OBR at 74, 455 N.E.2d at 1277. This holding is founded on a negligence standard, rather than fraud. The court's reasoning is largely based on parallels with products liability law, with the home builder in the same position as the manufacturer of a defective consumer product.

Other state courts have found this analogy persuasive. See, *e.g., Lemke v. Dagenais* (1988), 130 N.H. 782, 790, 547 A.2d 290, 295. "Public policy has compelled a change in the law of personal property and goods, as witnessed by the adoption of the U.C.C. [implied warranties]. The logic which compelled this change is equally persuasive for real property."

Treating a homebuilder as the manufacturer of a defective product is supported by many of the public policy considerations that led to evolution of products liability law. The builder has greater knowledge of the product, is in a better position to discover defects that will become latent when concealed by further construction, and, most importantly, can prevent or reduce the incidence of defects through careful construction. None of these applies to intermediate owners of defective housing, however, and the elimination of a privity requirement has not progressed to cases such as the present one. In those few cases where a non-builder vendor was found liable to a subsequent vendor for latent defects despite the existence of intervening owners, courts have based the prior vendor's duty to disclose on the prior vendor's involvement, in some other capacity, with a subsequent sale. See, *e.g., Kovach v. McLellan* (Fla.App.1990), 564 So.2d 274 (prior vendor served as mortgagee in subsequent resale); *Schnell v. Gustafson* (Colo.App.1981), 638 P.2d 850 (prior vendor participated in subsequent resale by showing the house to prospective buyers and permitting belief

that they were the current owners of the house). In contrast, in the present case, it is not alleged that the Handkes participated in the appellants' purchase of the house in any capacity.

Ohio courts have twice had occasion to consider a claim such as the one before us since the Ohio Supreme Court decided *McMillan.* In both cases, the Sixth District Court of Appeals maintained the requirement of privity. In *Davis v. Cavalear Realty Co.* (Feb. 12, 1988), Lucas App. No. L–87–044, unreported, 1988 WL 13210, the buyer of a home with a defective heating system alleged that a prior owner, who was not a party to plaintiff's purchase of the property, was liable for not disclosing the latent defect. The court held that, absent privity, the prior owner was a stranger to any fraud which may have occurred in connection with the plaintiff's purchase of the property from the intervening owner. This reasoning was followed in *Frost v. Bank One of Fremont* (Sept. 28, 1990), Sandusky App. No. S–89–32, unreported, 1990 WL 139903.

The requirement of privity in the type of case before us is thus still uniformly in force,[1] with the narrow and inapplicable exceptions cited in *Kovach* and *Schnell, supra.* As stated with remarkable candor in appellees' brief, this is an area in which legal obligations do not follow from moral ones. This appears to be an unintended recognition of the principle that equity follows the law. If equitable principles were controlling here, perhaps a different result would obtain. We must, however, adhere to legal principles, even though the result may be harsh to an innocent purchaser. We conclude the trial court properly dismissed the Handkes from the action under Civ.R. 12(B)(6), as the complaint, as to Handkes, failed to state a claim upon which relief could be granted. Appellants' assignments of error are, therefore, overruled.

*Judgment affirmed.*

PETREE and CLOSE, JJ., concur.

---

1. The issue of whether the Handkes had a duty to disclose latent defects, and whether that duty extended to subsequent purchasers, is addressed in light of Ohio law at the time the Blakes purchased the house in 1988. R.C. 5302.30, which will take effect on July 1, 1993, will require completion of a prescribed "property disclosure form" by sellers of residential property.