OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Bill Ryan, an attorney acting pro se, appeals the decision of the County Court, Western Division, Belmont County, Ohio, entering judgment in favor of Appellee, Ernest Melcher, also pro se. Ryan challenges several aspects of the proceedings below. However, none of these assignments of error have merit. Accordingly, the judgment of the trial court is affirmed.
 {¶ 2} This case arises out of a contract entered into by Ryan and Melcher for the construction of a wood deck roof with shingles at Ryan's residence. According to the contract, Melcher was to construct the roof and Ryan was to furnish all the building materials. Because installation of the roof involved exposing the gutter system, the parties agreed that work would be undertaken every full day until the roof was completed. No compensation was to be paid until all the work was completed.
 {¶ 3} After Melcher had begun construction on the roof, Ryan became dissatisfied with the progress. When Melcher packed up all his tools on a Friday and told Ryan that he would see him tomorrow, Ryan saw that as a sign that Melcher would not return. He informed Melcher that the work had to be done by October 6th or else he would not pay. Melcher took this as an absolute refusal to pay and threatened suit. In response, Ryan told Melcher not to return to his house to complete the work. Soon after, Melcher filed suit for payment for services rendered and Ryan countersued for the unfinished and unworkmanlike performance.
 {¶ 4} The case was brought to trial before the small claims court and Ryan called Larry Perdue to the stand. Perdue, a professional roofer who completed the roofing project, testified with regard to his opinion of the quality of the roofing project and what he needed to do to correct any problems. Ryan next called Robert Smith, an engineering contractor, to the stand. However, Smith refused to testify on behalf of Ryan as he was not retained as an expert witness. The trial court allowed Smith to leave despite Ryan's claim that he validly subpoenaed him to be in court. After hearing both parties' evidence, the trial court entered judgment in favor of Melcher in the amount of $1,400 for the seven completed days of work.
 {¶ 5} As his first of five assignments of error, Ryan claims:
 {¶ 6} "The trial court committed prejudicial error in prohibiting defendant from eliciting testimony from his own witnesses, either directly or through the court, thereby eliminating crucial testimony at trial."
 {¶ 7} Although the trial court permitted Ryan's witness to testify in detail as to his opinion of the quality of Melcher's work, Perdue was not permitted to remain on the stand to give additional testimony regarding pictures taken of the actual project. The trial court explained:
 {¶ 8} "Mr. Ryan, I haven't told you you can't introduce the photographs. I don't believe I need Mr. Perdue to identify and speak about the photographs. The only purpose of the photographs is to be illustrative so that the trier of fact, which is me, can understand what he is talking about. And I understand what he is talking about, so we're not going to do that at this time."
 {¶ 9} This court has stated before that the rules of civil procedure are relaxed and the rules of evidence are inapplicable in small claims actions. Stull v. Budget Interior (Sept. 26, 2002), 7th Dist. No. 02 BA 17 citing Feinstein v. HabitatWallpaper Blinds (Dec. 22, 1994), 8th Dist. No. 67419. Given the purposes and informal nature of small claims courts, to resolve disputes expeditiously and with minimal costs to the parties, it would be difficult to say that the trial court erred by not allowing the witness to provide cumulative testimony regarding something the trier of fact claimed to already understand. Accordingly, this assignment of error is meritless.
 {¶ 10} As his second assignment of error, Ryan claims:
 {¶ 11} "The Trial court committed prejudicial error in prohibiting, disallowing or dismissing a key witness for defendant, an Ohio certified structural engineer and his testimony, who attended the trial pursuant to a valid subpoena duces tecum."
 {¶ 12} It appears from the record that Ryan did in fact subpoena Smith after Smith had come out to Ryan's house to inspect the work completed by Melcher. When he found out that Ryan wanted him to give testimony at trial, he informed Ryan that his fee for preparing a report and giving expert testimony would be $1,500. Smith told Ryan that this fee was not worth it as it was for a small claims case worth the same amount of money. Nevertheless, Ryan subpoenaed Smith.
 {¶ 13} When Smith was called to the stand he explained to the trial court that he was not retained as an expert witness and therefore he didn't put "his engineering seal" on any conclusions he might have drawn after looking at Ryan's home. He then told the court that he did not want to testify on Ryan's behalf.
 {¶ 14} The trial court determined on the record that Smith was an expert witness, not a fact witness, and therefore couldn't be ordered to testify without first being compensated. Ryan now challenges this conclusion arguing that he properly subpoenaed Smith and he should have been forced to testify. However, Ryan is incorrect in his assertion.
 {¶ 15} Pursuant to Civ.R. 45(C)(3)(c) and (d), on timely motion, a trial court shall quash or modify a subpoena when it "requires disclosure of a fact known or opinion held by an expert not retained or specially employed by any party in anticipation of litigation or preparation for trial as described by Civ.R. 26(B)(4), if the fact or opinion does not describe specific events or occurrences in dispute and results from study by that expert that was not made at the request of any party [or] subjects a person to undue burden."
 {¶ 16} Civ.R. 45(C)(5) provides:
 {¶ 17} "If a motion is made under division (C)(3)(c) or (C)(3)(d) of this rule, the court shall quash or modify the subpoena unless the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated."
 {¶ 18} Because this rule permits a trial court to quash a subpoena ordering an expert to testify about facts in dispute without reasonable compensation, it would logically follow that a trial court would be permitted to excuse an expert witness from testifying. Accordingly, the trial court did not err in refusing to compel Smith to testify without being retained or compensated.
 {¶ 19} This resolution does not fully address Ryan's assignment of error, however, as he further argues that he should have been able to testify as to the comments Smith made to him after examining his home. It appears that this portion of his argument is meritorious.
 {¶ 20} This court explained in Stull v. Budget Interior
(Sept. 26, 2002), 7th Dist. No. 02 BA 17.
 {¶ 21} "Evid.R. 101(C)(8) expressly states that the Ohio Rules of Evidence are not applicable to proceedings in small claims court. Cf. Civ.R. 1(A) and (C) (stating that the Ohio Rules of Civil Procedure do not apply to proceedings in small claims court to the extent that would be clearly inapplicable). Thus, where a standard of care is outlined in small claims court, the plaintiff can present hearsay evidence to support her claim.Dillman v. B B RV Serv. (June 29, 2000), 8th Dist. No. 76457 (where the court held that written findings of expert were sufficient); Turner v. Sinha (1989), 65 Ohio App.3d 30,582 N.E.2d 1018 (where the Twelfth District held that plaintiff's testimony as to what an expert told her is sufficient evidence to prove a veterinarian's failure to comply with the applicable standard of care)." Id. at 2.
 {¶ 22} Based on these prior holdings, this court explained that it was error for the trial court to prevent the appellee from giving hearsay testimony relaying statements made to her by an expert. The rationale for this decision was more thoroughly explained in Turner where the trial court allowed into evidence hearsay statements made by veterinarians to the plaintiff after her dog was injured in a car accident. In Turner the Twelfth District stated:
 {¶ 23} "Because the rules of evidence are inapplicable in small claims court, we find no error by the trial court in allowing the hearsay statements into evidence. This is the type of case for which small claims courts were designed and we believe that formalistic application of the hearsay rules in this case would undermine the goals of the `layman's forum.' Turner had no expertise and her only alternative would be to subpoena the veterinarians into court. To require her to do so would place an undue burden on her and other small claims litigants similarly situated." Id. at 33-34.
 {¶ 24} Following that line of thinking, it would appear that the trial court erred in not allowing Ryan to testify as to what he was told by Smith. However, Evid.R. 103(A)(2) provides that, in order to use exclusion of evidence as a basis for appeal, the substance of the evidence must be made known to the court by proffer or must be "apparent from the context within which questions were asked." See, also, State v. Davie,80 Ohio St.3d 311, 327, 1997-Ohio-341. State v. Brooks (1989),44 Ohio St.3d 185, 195, 542 N.E.2d 636.
 {¶ 25} "A party may not predicate error on the exclusion of evidence during the examination in chief unless two conditions are met: (1) the exclusion of such evidence must affect a substantial right of the party and (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked."State v. Gilmore (1986), 28 Ohio St.3d 190, 503 N.E.2d 147, syllabus.
 {¶ 26} In the present case, there is no way of knowing whether the trial court's error was prejudicial as there was no proffer made by Ryan despite the trial court telling him he was permitted to do so. As such, Ryan has effectively waived any error by failing to properly preserve the issue for appellate review. Gilmore at syllabus. Accordingly, this assignment of error is meritless.
 {¶ 27} As his third assignment of error, Ryan claims:
 {¶ 28} "The trial court committed prejudicial error in prohibiting cross-examination of plaintiff."
 {¶ 29} As previously mentioned, small claims court is a "layman's forum" and therefore the rules of evidence do not apply. Thus, it would not be an abuse of discretion for the trial court to control the manner in which testimony would be elicited from the witnesses. The trial court did not allow either side to cross examine witnesses. Therefore, this assignment is likewise meritless.
 Transfer from Small Claims Department {¶ 30} For his fourth assignment of error, Ryan claims:
 {¶ 31} "The trial court committed prejudicial error in not certifying the proceedings to the court of common pleas as provided in Rule 13(J) of the Ohio Rules of Civil Procedure."
 {¶ 32} Ryan argues that the trial court should have transferred this case to the common pleas court automatically after his filing of a counterclaim in excess of three thousand dollars pursuant to Civ. R. 13 (J). That rule provides:
 {¶ 33} "In the event that a counterclaim, cross-claim, or third-party claim exceeds the jurisdiction of the court, the court shall certify the proceedings in the case to the court of common pleas."
 {¶ 34} What Ryan fails to recognize is that the small claims court is merely a branch of the municipal court which retains jurisdiction over cases where the amount claimed does not exceed fifteen thousand dollars. Thus, his case would merely be transferred to the municipal court's regular docket and not to the court of common pleas. What Ryan probably meant to cite was R.C. 1925.10 which states:
 {¶ 35} "(A) A civil action that is duly entered on the docket of the small claims division shall be transferred to the regular docket of the court upon the motion of the court made at any stage of the civil action or by the filing of a counterclaim or cross-claim for more than three thousand dollars.
 {¶ 36} "(B) In the discretion of the court, a case duly entered on the docket of the small claims division may be transferred to the regular docket of the court upon the motion of a party against whom a claim, counterclaim, or cross-claim is instituted or upon the motion of a third-party defendant. A motion filed under this division shall be accompanied by an affidavit stating that a good defense to the claim exists, setting forth the grounds of the defense, and setting forth the compliance of the party or third-party defendant with any terms fixed by the court. The failure to file a motion under this division to transfer a case to the regular docket of the court constitutes a waiver by the party or third-party defendant of any right to a trial by jury."
 {¶ 37} Pursuant to that statute, the small claims court is only required to transfer the case upon motion of the party. In this case, Ryan did not move the small claims court to transfer the case and the trial court noted in the record that it would therefore limit any damages to three thousand dollars. Accordingly, this assignment of error is also meritless.
 Manifest Weight {¶ 38} As his final assignment of error, Ryan states:
 {¶ 39} "The trial court committed prejudicial error in finding in favor of plaintiff as such ruling was against the manifest weight of the evidence."
 {¶ 40} "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Snaderv. Job Master Svcs. (2000), 136 Ohio App.3d 86, 89,735 N.E.2d 980. Thus, this court must, reviewing the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 41} Here, Ryan claims that the trial court should have ruled in his favor based on his allegation that Melcher performed in an unworkmanlike manner. Ryan is correct that once a builder undertakes a construction contract, common law imposes upon him a duty to perform in a workmanlike manner. Mitchem v. Johnson
(1966), 7 Ohio St.2d 66; Velotta v. Leo Petronzio Landscaping,Inc. (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147. To prevail on a negligence claim for failure to perform in a workmanlike manner, a plaintiff must "show by a preponderance of the evidence that [the defendant] failed to exercise ordinary care and skill, and such failure proximately caused the damages."M.L. Simmons, Inc. v. Bellman Plumbing, Inc. (July 6, 1995), Cuyahoga App. No. 67832, citing Mitchem, supra; Velotta, supra;McMillan v. Brune-Harpenau-Torbeck Builders, Inc. (1983),8 Ohio St.3d 3, 8 OBR 73, 455 N.E.2d 1276.
 {¶ 42} In the present case, the trial court found that Ryan did not meet his burden of proof that Melcher's work, to the extent it was performed, was unworkmanlike. The trial court noted that a substantial amount of Ryan's claims of unworkmanlike performance were based on incomplete work. The trial court blamed the incompletion of the project on Ryan's failure to timely supply sufficient and appropriate materials for the job. The trial court thus concluded that Ryan's termination for unworkmanlike performance was not justified since Melcher was not provided with an adequate opportunity to complete his performance.
 {¶ 43} Melcher's testimony at trial appears to support this conclusion. Melcher explained:
 {¶ 44} "It's hard to say that it was done or done right — I mean wasn't done right because I didn't get to finish it. The hips and valleys (inaudible), right, weren't finished because I wasn't able to finish them.
 {¶ 45} "The water wasn't cut into the roof — or the roof wasn't cut open so that water could run underneath of it and just fall back where it usually originally falls if there would have been a gutter there, which now there was an existing roof there. So it's hard to say — I think I did it right. I do it all the time. I mean, it's — I can say it about numerous people's work and they can say it about mine.
 {¶ 46} "If I could have finished it, it would have been done right, but —"
 {¶ 47} In response to this testimony, Perdue, the contractor that completed the project testified:
 {¶ 48} "Why I put on here what I did, shingles are not applied right according to manufacturer's specifications, I probably counted 20 different spots that shingles weren't nailed properly and I had to take the shingle back out, cut the one tab off and put another tab in and nail it. I didn't lift up every shingle and look at it. I just replaced what I could see was nailed wrong.
 {¶ 49} "As far as the valley goes, it's — When you're doing a roof like that and you have an addition onto a house, you take the shingles off of the house. When you bring the other ones over, they run up onto the house, the main house, the other ones — and you put the other ones in. It looked like to me they had no intention of tying into the house. Because why would you bring a shingle over and cut it off instead of extending it up onto the main house? They brought the shingles over and cut them off even with the plywood instead of tying them into the house as you come across. It's like I'm going to tear off the roof and then tear these shingles back off that I put on and run up onto the roof. That was my only say in it that it wasn't done right."
 {¶ 50} The trial court then gave Melcher a chance to respond. Melcher explained:
 {¶ 51} "The reason why it was done like that, Your Honor, was because he wanted underneath — everything done underneath. And we stopped at that point because it was raining and I didn't want to cut into his roof, like he said, and expose his open roof was the reason why we did it like that. We were waiting until the end of the job — We were doing all of the stuff underneath, putting all of the ties underneath the roof. Because it was all going to rain, was always in the forecast, I didn't want to open up his roof and then cause another problem. So that was the reason why we stopped at that point. We ran up the shingles and stopped them there.
 {¶ 52} "He's right — Everything he said is exactly right how it works. You fold everything over and weave it in. Well, it wasn't done. We left it there so water could shed underneath of it. And I didn't open or touch none of his roof because it would expose his ceiling and water would leak into his house and get into his kitchen and his ceiling would be rotted and water would be in there."
 {¶ 53} The court then asked Melcher why he stopped working on the roof to which he replied:
 {¶ 54} "We stopped (inaudible) because it was starting to rain and then we went around down underneath. (inaudible) If we couldn't do something underneath, on top when it was raining, we would go underneath of it, because there was already shingles off inside. So we was underneath doing things. We had a lot of things that we were doing. There's little things that had to be done, braces, gluing, all kids of things. So we went from one to the next. So when it started raining, we went underneath and just left that where it was at. I said when we get all done that will be one — just one part of the day, we'll hurry up and rip it off, weave it in and be done with it instead of getting caught in the rain and things could have been opened up. I mean, that's how I did it. That was the reason why I did it like that. It wasn't just to stop and leave it. It wasn't going to be left like that."
 {¶ 55} In light of this evidence, we cannot say the trial court lost its way in deciding that Melcher's work on the roof was not unworkmanlike. The testimony given by Melcher reasonably explains why he progressed with the job in the way that he did. Although the other contractor testified that the work was improperly done, Melcher explained that he left it in that temporary state so that he could avoid rain damage to the home. He explained that if given the chance, he would have taken out what he had done and would have properly carried the shingles all the way over the roof. Because this testimony appears to be competent and credible, the trial court did not err in choosing to believe this testimony over that of Ryan and Perdue.
 {¶ 56} Accordingly, Ryan's assignments of error are meritless, and the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.