TURNER, Appellee,

v.

SINHA, Appellant.

[Cite as *Turner v. Sinha* (1989), 65 Ohio App.3d 30.]

Court of Appeals of Ohio,
Butler County.

No. CA88–10–150.

Decided Oct. 10, 1989.

*Terri Turner, pro se.*
*Patricia Shanes Oney,* for appellant.

## Per Curiam.

This is an appeal by defendant-appellant, Kapildeo N. Sinha, D.V.M., from a judgment rendered in favor of plaintiff-appellee, Terri Turner, by the Small Claims Division of the Hamilton Municipal Court.

On August 11, 1988, Turner filed a complaint against Sinha alleging malpractice and requesting judgment in the amount of $500 plus interest. A hearing was held on September 16, 1988. Turner testified that on March 28, 1988, between 8:30 and 9:00 p.m., her pedigreed Old English Sheepdog, Cadbury, was hit by a car. She was not able to contact her family veterinarian so she took Cadbury to the Hamilton Avenue Animal Hospital where Sinha was on duty. Sinha indicated that X-rays could not be taken of the dog immediately and that until the X-rays were taken, he could not give a diagnosis of the dog's condition. Sinha produced a statement showing a price list for services of $258 and insisted that Turner and her husband sign the paper and pay a deposit before treatment could continue.

Sinha took two sets of X-rays but stated he could not tell if the dog's back was broken and that he needed more X-rays which would cost an additional $15. Later, Sinha stated that the third set of X-rays were inconclusive and the dog would have to be left there overnight.

The next morning, Turner called the animal hospital and received a report that her dog was in a lot of pain. However, Sinha was not yet in the office. She called her family veterinarian, who was also not in the office. After a recommendation from a friend, she called another veterinarian, one Dr. Tscheiller, who asked her if the dog could get up and if its paws were stiff. When Turner replied that it could not sit up and that its paws were stiff, Tscheiller told her that the dog's back was broken. He also told her to get

Cadbury out of the Hamilton Avenue Animal Hospital and to take it to her regular veterinarian.

Sinha called shortly afterwards and told her that Cadbury's back was not broken. Turner informed him that she would be coming to get her dog and take it to her veterinarian. She then called her regular veterinarian who told her to bring the dog and the X-rays with her. She called the animal hospital and was told she would have to put down a $20 deposit on the X-rays before they could be taken out of the office.

When she arrived at the animal hospital, she was told that since there was some dispute about the bill she could not take the dog until she paid $258 in cash. She talked with Sinha and his associate, one Dr. Cable, who stated that the dog's back was not broken. They insisted on payment before she could take it home.

Turner went home to collect the cash and waited approximately one and one-half hours to get the X-rays. By the time she got to her veterinarian's office, he had left for the day. She called Tscheiller who told her to bring Cadbury in the next morning.

Tscheiller and his associate, one Dr. Rothenbush, examined Cadbury and studied the X-rays taken by Sinha. They found that the dog's entire pelvis had been crushed and that there was a fracture further up in the spine. They charged $40 to put the dog to sleep and dispose of the body.

Turner claimed at the hearing that the dog should have been put to sleep immediately and that the charges by Sinha were needless and excessive. Her testimony was corroborated by her husband and two other witnesses.

Sinha testified that when Turner brought Cadbury to the hospital, he made a visual check of the dog's heart rate, breathing and mucus membranes, and he conducted a whole-body examination to see if the dog had cuts and bruises. He then gave the dog an injection for pain. The dog had recently given birth to twelve puppies and was nursing. Consequently, he had to get information as to whether the dog was receiving calcium supplements because he was worried that it might go into convulsions. His initial examination indicated possible multiple fractures in the spine, pelvis and hind legs. He explained to Turner that there was no way to be sure of the extent of the injuries without X-rays. He also explained that the dog was in severe shock and it was not advisable to anesthetize and manipulate it for X-rays. Instead, he advised that it would be better to stabilize the dog and treat it for shock prior to taking X-rays.

He testified that Turner insisted that she wanted to know the extent of the dog's injuries. The dog was treated for pain and given intravenous fluid

therapy in an effort to stabilize its condition. Turner waited at the hospital for two hours until the dog stabilized and X-rays of the spine could be taken.

The X-rays were not clear due to the amount of milk in the nursing dog and had to be repeated. The X-rays revealed a fracture in the spine and pelvis which did not appear very severe. He advised Turner that it was possible that her dog might recover and she decided to leave the dog overnight and have it treated by her own veterinarian in the morning. She was given a written estimate of the cost of previous treatment, including leaving the dog overnight. She wrote a check for $258 and left.

At 9:00 a.m., she called and talked with Sinha who informed her that X-rays of the hind legs indicated that there was no fracture there. Turner indicated that she was upset with his treatment and would like to take the dog to her own veterinarian. She was told that she could call back later and Cable would review the status of her dog for her.

In the early afternoon of March 29, 1988, Turner went to the animal hospital to pick up her dog and expressed dissatisfaction about the charges which she felt were excessive. She indicated that she had put a stop order payment on the check and Cable told her she had to bring $258 in cash. She picked up the dog at 1:00 p.m. and took the X-rays to show her veterinarian.

The trial court took the matter under advisement and found in favor of Turner, awarding her $400 plus court costs. This appeal followed.

Sinha presents two assignments of error for review. For clarity, we will discuss the second assignment of error first.

In his second assignment of error, Sinha states that the trial court erred in allowing the admission of hearsay evidence as to what other veterinarians said was the proper diagnosis in this case. He argues that even though the rules of evidence are relaxed in small claims court, he was prejudiced by the admission of hearsay statements into evidence and that the trial court abused its discretion. We find this assignment of error is not well taken.

Evid.R. 101(C)(8) provides that the Ohio Rules of Evidence are inapplicable to proceedings in the small claims division of a county or municipal court, not merely "relaxed." The small claims division is a "layman's forum" and a judge or referee, while exercising some discretion, " * * * should not deny a layman justice through the formalistic application of the law of evidence." Staff Note to Evid.R. 101. However, some reliable evidence is still required in order to prove a claim. *Ray v. White* (June 29, 1984), Madison App. No. CA84–01–003, unreported, at 7–8, 1984 WL 3371.

Because the rules of evidence are inapplicable in small claims court, we find no error by the trial court in allowing the hearsay statements into

evidence. This is the type of case for which small claims courts were designed and we believe that formalistic application of the hearsay rules in this case would undermine the goals of the "layman's forum." Turner had no expertise and her only alternative would be to subpoena the veterinarians into court. To require her to do so would place an undue burden on her and other small claims litigants similarly situated. We do not find the decision of the trial judge to be so arbitrary or unreasonable as to connote an abuse of discretion. Accordingly, Sinha's second assignment of error is overruled.

In his first assignment of error, Sinha states that the judgment in favor of Turner was against the manifest weight of the evidence. He argues that the dispute between the parties is about the correct reading of the X-rays. He claims that there was no evidence before the court that he could determine without X-rays that the injuries to the dog's spine were so extensive as to make it necessary to put the dog to sleep immediately. He contends also that there was no evidence that those X-rays could be taken immediately and without an anesthetic. Furthermore, he contends that there was also no evidence that indicated that any of the first series of X-rays showed a fracture. We find this assignment of error is not well taken.

"Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

"Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party." *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 283, 247 N.E.2d 732, 733. The amount of care required of a person to establish whether he or she has discharged a duty to another is the degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances. *Id.*

As applied to professionals, the standard of care has been stated:

" 'Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.' " *Richard v. Staehle* (1980), 70 Ohio App.2d 93, 98, 24 O.O.3d 121, 124, 434 N.E.2d 1379, 1384 (quoting 2 Restatement of the Laws 2d, Torts [1965] 73, Section 299A).

Thus, in order to establish negligence by a veterinarian, it must be shown that the injury complained of was caused by the doing of a particular thing that a veterinarian of ordinary skill, care and diligence would not have done under like or similar circumstances, or by the failure or omission to do some particular thing that such a veterinarian would have done under like or similar circumstances. See *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 93, 529 N.E.2d 449, 455.

In examining the record in this case, we bear in mind the informality of proceedings in small claims courts and their purpose, *i.e.*, to provide a less costly and less protracted procedure for the litigants. Turner presented evidence that Tscheiller had told her that if a dog cannot get up on its hips or if its paws are stiff, then its back is broken, implying that X-rays are unnecessary. When she told him about the treatment given her dog at the animal hospital, he said that "he had never heard such a story and to get her [the dog] out of there * * *." Turner also testified that Tscheiller and Rothenbush examined the X-rays taken by Sinha and discovered that the dog had a crushed pelvis and a spinal fracture, yet Sinha had told her that the dog's back was not broken. Tscheiller and Rothenbush also told her that they could not believe that Sinha had not seen the fractures, which were very clear.

Thus, there was sufficient evidence from which the trier of fact could determine that Sinha had incorrectly interpreted the X-rays and had failed to diagnose the dog's injuries. These were things which a veterinarian of ordinary skill and diligence would not have done under similar circumstances. Sinha disputes Turner's testimony. However, the issue is essentially one of credibility and matters as to the credibility of witnesses are for the trier of fact to decide. Great deference must be given to the findings of fact by the trial court. As a reviewing court, we should not substitute our judgment for that of the trial court. *Seasons Coal Co., supra,* 10 Ohio St.3d at 80, 10 OBR at 410, 461 N.E.2d at 1276. Accordingly, Sinha's first assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and WILLIAM W. YOUNG, JJ., concur.