JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff appeals the judgment of the Bedford Municipal Court,[1] which adopted the magistrate's report finding in favor of defendants, Dr. Kelly Gellasch, dba Veterinary Referral Clinic and Emergency Center and Dr. Eileen Heldmann, dba Veterinary Referral Clinic and Emergency Center (collectively, "defendants").
 {¶ 2} In April 2004, plaintiff lived in Virginia. When her mother, a Pennsylvania resident, became ill, plaintiff left her home to care for her mother. While living at her mother's home, plaintiff's pet dog, Elmo, became ill. Plaintiff was referred to defendants' veterinary clinic where a successful surgery on Elmo was performed on April 20, 2004.
 {¶ 3} As part of Elmo's surgical recovery, a catheter was inserted into his urinary tract. By April 26th, Elmo's chart noted a spike in temperature and an unusually strong smell to his urine. Following several dangerous temperature fluctuations, defendants administered one dose of antibiotics. On April 28th, Elmo died of a widespread infection that had started in his urinary tract.
 {¶ 4} Filing suit against defendants, plaintiff alleged their negligence in failing to administer antibiotics sooner to Elmo. The matter came on for hearing before a court magistrate who found in favor of defendants. The trial judge adopted the magistrate's findings and report. Plaintiff timely filed this appeal in which she asserts four assignments of error, the first of which states:
I. THE COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF THE PLAINTIFF IN EXCLUDING TESTIMONY ON THE GROUNDS THAT IT WAS HEARSAY WHEN SUCH HEARSAY EVIDENCE IS ADMISSIBLE IN A SMALL CLAIMS HEARING.
 {¶ 5} Plaintiff argues that the trial court abused its discretion when it adopted the magistrate's report. According to plaintiff, the magistrate also abused her discretion in prohibiting her from testifying about what her veterinary experts told her about Elmo's treatment. The magistrate ruled that such testimony was inadmissible hearsay.
 {¶ 6} "The trial court's decision to adopt, reject or modify a magistrate's report will not be reversed on appeal unless the decision was an abuse of discretion." McClintock v. Fluellen,
Cuyahoga App. No. 82795, 2004-Ohio-58, at ¶ 13, citing Wade v.Wade (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305. An abuse of discretion has been defined as "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 7} As noted in Evid.R. 101(C)(8),[2] the Ohio Rules of Evidence do not apply in small claims proceedings.
In Turner v. Sinha (1989), 65 Ohio App.3d 30, 33,582 N.E.2d 1018, the court discussed the reasoning behind Evid.R. 101(C)(8): "Evid.R. 101(C)(8) provides that the Ohio Rules of Evidence are inapplicable to proceedings in the small claims division of a county or municipal court, not merely `relaxed.' The small claims division is a `layman's forum' and a judge or referee, while exercising some discretion, `* * * should not deny a layman justice through the formalistic application of the law of evidence.' Staff Note to Evid.R. 101. However, some reliable evidence is still required in order to prove a claim. Ray v.White (June 29, 1984), Madison App. No. CA84-01-003, unreported, 1984 Ohio App. LEXIS 10212, *8."
Lewis v. Hendrickson, Gallia App. No. 02CA18, 2003-Ohio-3756, at ¶ 18. "Thus, by design, proceedings in small claims courts are informal and geared to allowing individuals to resolve uncomplicated disputes quickly and inexpensively. Pro se activity is assumed and encouraged. The process is an alternative to full-blown judicial dispute resolution." Cleveland BarAssociation v. Pearlman, 106 Ohio St.3d 136, 2005-Ohio-4107, ¶15, 832 N.E.2d 1193.
 {¶ 8} As stated by this court, referees in small claims court should assist pro se plaintiffs "with the opportunity and guidance to present a more cogent case." Newton v. Blake, (Jan. 25, 1980), Cuyahoga App. No. 40320, 1980 Ohio App. LEXIS 13764, *6.
While Ohio law is unclear as to the exact role a small claims judge should play and it is imperative that such judge remain impartial, it is equally important that small claims courts provide an accessible, functionable forum for citizens acting pro se, where the pertinent facts are elicited by the court in order to ensure that justice is done. Small claims court is a special forum which should function in such manner as to obviate the need for traditional legal procedures and should be a court of first and final recourse. See, generally, note, The Ohio Small Claims Court: An Empirical Study, 42 Univ. Cincy. L. Rev. 469, 495-97.
Id.
 {¶ 9} In Turner v. Sinha (1998), 65 Ohio App.3d 30, plaintiff's dog was hit by a car. The dog was taken to a veterinarian who, after an initial set of x-rays, was unable to determine whether the dog had a broken back. Another set of x-rays were taken, but before those results were in, plaintiff contacted another veterinarian for a second opinion.
 {¶ 10} During trial, over defense counsel's objection, plaintiff stated that the second veterinarian told her that the x-rays the first veterinarian had taken were unnecessary to determine whether the dog's back was broken. From a description of the dog's physical condition by telephone, plaintiff explained, the second veterinarian determined that the dog's back was broken; the first veterinarian maintained, however, that the dog's back was not broken.
 {¶ 11} Plaintiff stated that she transferred her dog to the second veterinarian who, after determining that the dog did have a broken back, put the animal to sleep. Primarily as a result of plaintiff's testimony about what the second veterinarian had told her, the trial court ruled in plaintiff's favor and determined that she had established a veterinary malpractice case against defendant. Defendant appealed.
 {¶ 12} On appeal, the court affirmed the trial court's admission of plaintiff's testimony about what the second veterinarian had told her. The Turner court stated that even though plaintiff's statements would normally not be admissible under the Rules of Evidence, in this small claims case plaintiff's testimony concerning the statements and opinions of the second veterinarian was sufficient to meet her burden as this evidence demonstrated what a veterinarian of ordinary skill and diligence would have done under similar circumstances.
 {¶ 13} Turner, ¶ 20. The trial court's judgment in plaintiff's favor was affirmed. See, Diakakis v. Western ReserveVeterinary Hosp., Trumbull App. No. 2004-T-0151, 2006-Ohio-201, ¶ 13. Turner underscores the fact that litigants are not required to present expert witnesses in small claims court.
 {¶ 14} In the case at bar, plaintiff attempted to tell the court what her own veterinarian, Dr. Schmitt, and the head of the Ohio Veterinary Medical Board, Dr. Jerry Lamar, told her about Elmo's treatment while the dog was in defendants' care. At several points in the hearing, the magistrate either thwarted or completely prohibited plaintiff's testimony. What follows is an example of the general colloquy between plaintiff and the magistrate:
MS. LAUDERBAUGH: * * * Elmo's veterinarian, Dr. Joseph Smith, spent a long time looking over Elmo's records very thoroughly, and said what happened to Elmo could have been prevented if the proper care would have been given.
* * *
MS. LAUDERBAUGH: That's my first exhibit you have right there.
THE MAGISTRATE: So Dr. Smith's records are here. I don't want to hear what Dr. Smith told you, because I can't consider that. I want to know what Dr. Smith's records have to say.
* * *
THE MAGISTRATE: I have a letter from Dr. Smith that I will read.
MS. LAUDERBAUGH: Okay.
THE MAGISTRATE: Go on to your next point.
MR. BRISKIN: I will object to the letter, but you know why.
THE MAGISTRATE: I will consider it for what it is worth. Go ahead.
MS. LAUDERBAUGH: Okay, where was I?
Okay I spent a long time looking over Elmo's records very thoroughly, and said what happened to Elmo could have been prevented if proper care would have been given.
THE MAGISTRATE: Ma'am, I don't want to hear what Dr. Smith told you. Okay, it is improper for me to hear that. It is called hearsay.
* * *
THE MAGISTRATE: Okay, go to your next.
MS. LAUDERBAUGH: Okay, I also talked to the president. Dr. Jerry Lamar, of the Ohio Veterinary Medical —
THE MAGISTRATE: Ma'am, tell me what evidence you have as far as what these doctors did incorrectly. Not what other people told you to go do. I want to hear what they did wrong, and why you think they did it wrong, other than what Smith told you and the president of the Licensing Board told you.
Tr. 7-10.
 {¶ 15} The magistrate not only prevented plaintiff from testifying about what her experts had to say about Elmo's condition, but also gave little or no consideration to Dr. Schmitt's notarized letter,[3] plaintiff's Exhibit "1." That letter, however, would have assisted plaintiff in establishing the applicable standard of care along with demonstrating the cause of Elmo's death. In its entirety, the letter reads as follows:
To Whom It may Concern:
The death of Elmo Lauderbaugh due to an overwhelming bacterial infection was extremely unfortunate as it may have been preventable. His death came as quite a shock to me as I had seen him for an acupuncture treatment on April 3, just prior to his surgery.
Based on my review of the medical records supplied to me by Mrs. Lauderbaugh it seemed that Elmo was recovering as expected post-surgically. However, on April 26, 2004, he was found to have maladorous urine when his urinary bladder was expressed and a sample was submitted for culture and sensitivity. I was amazed to see that there was no record of a urinalysis having been done. This would have been a simple test to see if there indeed was a urinary tract infection which would have been the most likely cause of the foul smelling urine. A urinalysis would have taken 15 minutes as opposed to the 48-72 hours it takes to get culture results. Antibiotics could have been started earlier rather than waiting more than a day in spite of a rising temperature. In our practice we place all animals that have an indwelling urinary catheter on systemic antibiotics to prevent ascending infection, but according to Elmo's record that is not the policy at the Veterinary Referral Clinic.
I truly believe that the judicious use of antibiotics may have changed the outcome of this case. Sincerely,
Joseph Schmitt, V.M.D., CVA
 {¶ 16} Plaintiff was not permitted to read aloud the contents of Schmitt's letter even though it constituted substantive expert evidence in plaintiff's case. See, Diliman v. BB RV Serv.,
(June 29, 2000), Cuyahoga App. No. 76457, in which we held that "appellee did not need to present actual expert testimony. Rather, she was able to present the written findings of the industry professionals who told her the work was unacceptable."
 {¶ 17} Other than a passing comment that she would consider the letter for what it was worth, there is no evidence that the magistrate ever gave the letter the kind of evidentiary consideration warranted in small claims court. By failing to allow what was admissible testimony by plaintiff, the magistrate erred. Accordingly, the trial court abused its discretion when it adopted the magistrate's report.
 {¶ 18} For the foregoing reasons, plaintiff's first assignment of error is sustained.
II. THE COURT ERRED AS A MATTER OF LAW IN DENYING PLAINTIFF THE OPPORTUNITY TO CROSS-EXAMINE THE DEFENDANTS THEREBY DENYING PLAINTIFF A FAIR TRIAL AND DUE PROCESS OF LAW.
 {¶ 19} Plaintiff argues that she was denied due process of law when the magistrate would not allow her to cross-examine either of the defendants.
 {¶ 20} "In Ohio, pro se litigants are `presumed to have knowledge of the law and of correct legal procedure, and [are] held to the same standard as all other litigants.'" Bethke v.12900 Lake Avenue Condominium Association, Cuyahoga App. No. 76774, 2000 Ohio App. Lexis 4053, *13, citing Kilroy v. B.H.Lakeshore Co. (1996), 111 Ohio App.3d 357, 363, 676 N.E.2d 171,174 and Meyers v. First Natl. Bank (1981), 3 Ohio App.3d 209,210, 444 N.E.2d 412, 413. A trial court may not, however, deprive a pro se litigant the opportunity to cross-examine another party's witnesses. See, Barr v. Gunderson (1963), 195 N.E.2d 604, 1963 Ohio App. Lexis 903, *3-*5.
 {¶ 21} In the case at bar, defendant presented its case-in-chief primarily through the testimony of both defendants, Dr. Gellasch and Dr. Heldmann. After Dr. Gellasch had testified, defendant called Dr. Heldmann to the witness stand. Following a brief examination by defense counsel, the following exchange between the magistrate and Dr. Heldmann occurred:
THE MAGISTRATE: Did you ever tell the plaintiff that [Elmo] would live for two to three more years?
DR. HELDMANN: I would never tell the owner of a 16 and half year old dog that. We have had conversations with owners of 12 year old dogs, to put everything in perspective.
THE MAGISTRATE: Are you aware of why an autopsy was not performed here to determine the cause of death?
MS. LAUDERBAUGH: It's my understanding, and again, you might want to ask Dr. Gellasch that, because I believe she had a conversation with MS. LAUDERBAUGH —
MR. BRISKIN: Don't answer. I will ask her. Is it okay if I ask her from the bench?
THE MAGISTRATE: Sure. Is there anything else from Dr. Heldmann?
MR. BRISKIN: No, ma'am.
THE MAGISTRATE: Okay.
MR. BRISKIN: Dr. Gellasch, do you know why an autopsy was not performed in this case to determine the cause of death?
DR. GELLASCH: (Inaudible).
THE MAGISTRATE: So we don't know the ultimate cause of death?
MR. BRISKIN: Right.
THE MAGISTRATE: Do we really need to hear from Cynthia Cartellone?
MR. BRISKIN: No.
THE MAGISTRATE: Mrs. Lauderbaugh, come up here, please. You can stand behind the podium, please.
As the plaintiff, ma'am, you have the burden of proof. You have the burden of proving to the court, by what we call the preponderance of the evidence, that means more than 50 percent, okay —
MS. LAUDERBAUGH: Yes, ma'am.
Tr. 60-61.
 {¶ 22} Before deciding whether the magistrate prevented plaintiff from conducting a cross-examination of the defendants, we address another error. After defense counsel asked Dr. Gellasch why an autopsy was not performed on Elmo, the court reporter did not record the doctor's response. Then, when the magistrate asked Dr. Gellasch whether she knew the cause of Elmo's death, defense counsel answered the question, not the doctor.
 {¶ 23} Since we do not know the answer to the autopsy question and only defense counsel responded to the cause of death question, the record is not only incomplete, but also materially flawed on the question of the proximate cause of Elmo's death. Defense counsel should never have been permitted to answer the question directed to the witness.
 {¶ 24} The next error occurred when the magistrate unilaterally concluded the proceedings. Sua sponte, the magistrate ended the hearing by implicitly telling defense counsel that no further witnesses were needed. The magistrate then immediately ordered plaintiff to the podium and began delivering her conclusions about the case.
 {¶ 25} Even if plaintiff knew she had a right to cross-examine the defense witnesses, the magistrate never gave her an opportunity to exercise that right. We agree with plaintiff that the magistrate's conduct robbed her of her constitutional right to cross-examine defendants' witnesses. Accordingly, the trial court abused its discretion when it adopted the magistrate's report. Plaintiff's second assignment of error is sustained.
III. THE COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN REFUSING TO REVIEW OR CONSIDER DOCUMENTARY EVIDENCE ESTABLISHING THE DOG'S CAUSE OF DEATH AND/OR OTHER DOCUMENTARY EVIDENCE SUBMITTED BY THE PLAINTIFF IN SUPPORT OF HER CASE THEREBY DENYING PLAINTIFF A FAIR TRIAL.
 {¶ 26} Plaintiff argues that the magistrate did not consider any of the documentary evidence she submitted. Plaintiff further argues that the magistrate erred when she would not allow her to submit documentary evidence about the cause of Elmo's death. Both errors, plaintiff claims denied her due process to a fair trial as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Art. I, Section 10 of the Ohio Constitution. We agree.
 {¶ 27} Rexha v. Gonzales (6th Cir. 2006), 2006 U.S. App. LEXIS 2693, is a case procedurally similar to the case at bar. InRexha, an immigration court, not bound by the rules of evidence, determined that
[a]lthough immigration courts need not engage in a ritualistic incantation of each piece of evidence brought before it, there must be evidence in the record that the immigration court gave reasoned consideration to all of the evidence, such that we can be convinced that the court's determination is based on the record as a whole.
Id., *13.
 {¶ 28} In the case at bar, plaintiff submitted numerous items of documentary evidence, including, but not limited to, Elmo's medical history from his own veterinarian, his medical records while in defendants' care, and Dr. Schmitt's notarized letter. When she received each exhibit, the magistrate indicated she would review[4] the documents later in the proceeding but before she rendered any decision.
 {¶ 29} Contrary to the magistrate's claim, however, nothing in the record establishes she ever subsequently reviewed any of the documents before she rendered her decision. The trial court verbally hastened the hearing to a conclusion. Immediately after she called plaintiff to the podium, the magistrate rendered her decision in this case. The transcript does not indicate the magistrate ever went off the record. From the recorded sequence of events, we must conclude the magistrate failed to consider plaintiff's documentary evidence. Because of that failure, and because plaintiff was never permitted to read those documents aloud to the court, the magistrate denied plaintiff a fair hearing and thus deprived her the right to due process.
 {¶ 30} Plaintiff also argues that the magistrate acted unreasonably and arbitrarily when she refused to consider a document she had earlier encouraged a witness to find. During the hearing, plaintiff presented Linda Corey, a registered nurse, who testified about the treatment Elmo received from defendants just before his death. Towards the end of her testimony the following exchange occurred between Ms. Corey and the magistrate:
THE MAGISTRATE: Is there any documentation what the cause of death was?
MS. COREY: Yes, there is.
THE MAGISTRATE: Where is the documentation?
MS. COREY: The E. coli.
THE MAGISTRATE: Where is the documentation for the cause of death?
MS. COREY: No, that's not the one.
There is — actually, I was looking for one sheet of paper that actually said that.
This was the examination as of his 2D echo, and that was just prior to his death.
* * *
MS. COREY: All I have is the paperwork that states the cause of death was CHF and —
THE MAGISTRATE: Well, where is that documentation? I just asked you for it.
MS. COREY: I have to look for it. I didn't find it right away.
* * *
THE MAGISTRATE: Why don't you take some time and look, Ms. Corey, and we will get you back up here.
Tr. 40-41.
 {¶ 31} Contrary to the magistrate's promise to allow Ms. Corey to return to the stand, Ms. Corey never did. Further, even when the document detailing Elmo's cause of death was located, the magistrate unilaterally ended the proceedings. The following portion of the hearing transcript supports this conclusion:
THE MAGISTRATE: — that the procedure that defendants followed was negligent, more than 50 percent. That is your burden of proof to me.
If you prove to me that, well, maybe it's kind of equally balanced, they win. You have to prove more than 50 percent, for you to win, okay? Do you understand that?
MS. LAUDERBAUGH: She found the paper.
THE MAGISTRATE: You have not proven to me by more than 50 percent that these doctors were negligent in the care of your dog. Therefore, I do have to find for the defendants, and against you, okay?
Thank you, ma'am. Thank you very much. I know that you put a lot of time into this, and I know that you appreciate the extent of your loss. But you have not proven by law — ma'am, I have that.
MS. LAUDERBAUGH: He's Board Certified. She said he wasn't.
THE MAGISTRATE: Ma'am, it makes no difference if he is Board certified or not. You have not proven to me by more than 50 percent that these doctors didn't follow the correct procedure.
MS. LAUDERBAUGH: You asked her for the evidence, and she hasit. You said to bring it up, the piece of paper, and she has it.
THE MAGISTRATE: Thank you very much folks.
Tr. 60-63, emphasis added.
 {¶ 32} From this record, we conclude that plaintiff was unjustifiably prevented from producing critical evidence in her case, evidence that the magistrate herself instructed Ms. Corey to locate. Once the document was found, however, the magistrate refused to consider it.
 {¶ 33} The magistrate's decision to ignore documentary evidence constitutes an abuse of discretion. When the trial court adopted the magistrate's report, it similarly abused its discretion. Plaintiff's third assignment of error is sustained.
 {¶ 34} Because of our disposition of plaintiff's assignments of error one through three, assignment of error four is now moot.[5]
 {¶ 35} For the foregoing reasons, the judgment of the trial court is reversed and this matter remanded to the trial court for proceedings consistent with this opinion.
Judgment accordingly.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellees her costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, P.J., and Michael J. Corrigan, J., concur.
[1] A small claims court.
[2] (A) Applicability. — These rules govern proceedings in the courts of this state, subject to the exceptions stated in division (C) of this rule.
* * *
(C) Exceptions. — These rules (other than with respect to privileges) do not apply in the following situations: * * *
(8) Small claims division. Proceedings in the small claims division of a county or municipal court.
[3] The letter is marked as plaintiff's second Exhibit "1." That exhibit is signed by a Dr. Joseph Schmitt, not "Smith" as typed in the hearing transcript. For the sake of clarity, we assume that the court reporter did not correctly hear the doctor's name and then spelled it phonetically.
[4] She said, "once we get done, I will take the time to look at them;" and "I will look at them." Tr. at 19, 20.
[5] This assignment reads: "IV. THE PLAINTIFF WAS DENIED DUE PROCESS OF LAW IN THAT THE MAGISTRATE WAS IMPATIENT AND DISPLAYED A HOSTILE, COMBATIVE ATTITUDE TOWARD THE PLAINTIFF AS DEMONSTRATED THROUGHOUT THE RECORD."