**LIPNICK, Appellee,**

v.

**REISINGER, Appellant.**

[Cite as *Lipnick v. Reisinger,* 168 Ohio App.3d 253, 2006-Ohio-3878.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 05CA008840.

Decided July 31, 2006.

Victoria A. Lipnick, pro se.

Allan M. Michelson, for appellant.

MOORE, Judge.

{¶ 1} Appellant, Terry Reisinger, appeals from the judgment of the Oberlin Municipal Court awarding appellee, Victoria Lipnick, $1,367 in damages. This court reverses.

I

{¶ 2} On August 2, 2005, appellee sought to purchase a Yorkshire terrier puppy from appellant. The puppy, Lola, was the smallest dog in the litter and because of her size was referred to as a "Teacup Yorkie." Appellant explained to appellee that as a result of her small size, Lola would require a special diet and that it was not uncommon for dogs of that size to have health problems. After these explanations and warnings, appellant and appellee executed a purchase agreement in which appellee agreed to pay $1,200 for Lola.

{¶ 3} The purchase agreement specifically excluded hypoglycemia from the warranty provided by appellant. In addition, the purchase agreement required that appellee have her veterinarian examine Lola within 48 hours of the purchase to ensure that she was in good health. Appellee's veterinarian examined Lola and found no obvious health problems. Tragically, Lola became lethargic shortly after she returned home with appellee and stopped eating for nearly a week. On August 13, 2005, appellee brought Lola to the veterinarian, but the veterinarian could not revive Lola and on August 14, 2005, the puppy died. Appellee's veterinarian listed her diagnosis as "hypoglycemic, open."

{¶ 4} Pursuant to the terms of the purchase agreement, appellee then released the puppy to appellant so that appellant could have a necropsy performed on the puppy to verify the cause of death. Appellant's veterinarian concluded that the "cause of death was most likely hypoglycemia as diagnosed by the attending veterinarian." As a result of the exclusion of hypoglycemia in the purchase agreement's guarantee, appellant refused to refund appellee's money.

{¶ 5} When she was unable to obtain a refund, appellee filed suit in the Small Claims Division of Oberlin Municipal Court. Upon taking evidence from the parties, the trial court found that appellant had breached the purchase agreement and awarded appellee the $1,200 purchase price and $167 in veterinarian bills. In addition, the trial court found that even if appellant had not breached the purchase agreement, she had breached two different implied warranties. Appellant timely appealed the trial court's judgment, raising five assignments of error for review. To facilitate our analysis, we have combined several of appellant's assignments of error.

## II

### ASSIGNMENT OF ERROR I

The trial court erred in finding that appellant breached the implied warranty of merchantability in the sale of this product, a puppy, to appellee in the absence of any evidence that the product sold was defective.

### ASSIGNMENT OF ERROR II

The trial court erred in creating an implied warranty in this transaction that the product should not be sold and released to an inexperienced owner such as appellee, and that the appellant breached this warranty.

### ASSIGNMENT OF ERROR III

The trial court erred in finding that the puppy was in questionable health and sold with health defects by appellant in the absence of any evidence in support of that conclusion.

{¶ 6} In her first assignment of error, appellant asserts that the trial court erred in finding that she breached the implied warranty of merchantability by selling a defective product. In her third assignment of error, appellant contends that the trial court erred in finding the product defective absent any evidence of a defect at the time of sale. In her second assignment of error, appellant argues that the trial court erred in creating a new implied warranty and finding that appellant had violated that warranty. We agree with appellant's arguments.

{¶ 7} As an initial matter, this court notes that appellee failed to file an appellate brief in the instant appeal. Therefore, "[p]ursuant to App.R. 18(C), this Court may accept the Appellant's statement of the facts and issues as presented in Appellant's brief as correct and reverse the judgment of the trial court if [Appellant's] brief reasonably appears to sustain such action." *Bank of New York v. Smith,* 9th Dist. No. 21534, 2003-Ohio-4633, 2003 WL 22047636, at ¶ 2.

{¶ 8} While appellant has not provided a standard of review for her assignments of error, she has challenged the weight of the evidence before the trial court. Accordingly, we utilize such a standard of review.

{¶ 9} We review whether a judgment is against the manifest weight of the evidence in a civil context utilizing the same standard of review as that used in the criminal context. *Frederick v. Born* (Aug. 21, 1996), 9th Dist. No. 95CA006286, 1996 WL 471219, at *6. This court must therefore review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 10} Further, this court has stated that it "will not reverse the judgment of the trial court as being against the manifest weight of the evidence if the judgment is based upon some competent, credible evidence that speaks to all of the material elements of the case." *Morris v. Andros,* 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147, at ¶ 18. "This standard is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent reversal." *Bell v. Joecken* (Apr. 10, 2002), 9th Dist. No. 20705, 2002 WL 533399, at *2.

### Implied Warranty of Merchantability

{¶ 11} Under R.C. 1302.27(A), an implied warranty of merchantability arises for the sale of any good by a merchant. To be merchantable, the goods must be fit for the ordinary purpose for which they are designed. R.C. 1302.27(B)(3). The implied warranty of merchantability relies upon the following principle:

> "[T]he ordinary buyer in a normal commercial transaction has a right to expect that the goods which are purchased will not turn out to be completely worthless. The purchaser cannot be expected to purchase goods offered by a merchant for sale and use and then find the goods are suitable only for the junk pile."

*Mayer v. Frame* (Dec. 6, 2000), 9th Dist. No. 3053–M, 2000 WL 1783583, at *3, quoting *Internatl. Petroleum Servs., Inc. v. S & N Well Serv., Inc.* (1982), 230 Kan. 452, 454, 639 P.2d 29.

{¶ 12} Initially, we note that it is unlikely that appellee may avail herself of the implied warranty of merchantability. R.C. 1302.29(C)(2) provides that

> when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods

there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.

It is undisputed that appellee had the puppy inspected by her veterinarian and had the opportunity to return the puppy if her veterinarian found any health problems. Accordingly, we find it unlikely that any implied warranty of merchantability applied to the sale.

{¶ 13} However, assuming arguendo that such a warranty flowed from the sale, a review of the record reveals that appellee provided no evidence that the puppy had health problems when it was purchased. In its journal entry, the trial court noted as follows:

[Appellee], pursuant to the contract, took the puppy to her veterinarian as required by the contract, and the veterinarian could not find any obvious health problems. The court does not feel that this exam precludes a finding that the puppy was not in good health based upon the unique facts and circumstances of this case.

We agree that despite her veterinarian's initial examination, appellee was free to introduce evidence that the puppy had health defects when it was sold to her. Appellee, however, offered no such evidence to the trial court. Rather, the sole evidence introduced before the trial court indicated the puppy became ill after it was purchased. While we recognize that the puppy in fact died only 11 days after it was purchased, there is no evidence to support the trial court's finding that the puppy was ill at the time it was sold to appellee.

### Additional Implied Warranty

{¶ 14} In its journal entry, the trial court held as follows:

In this case the court finds there was an implied warranty that the puppy be released at an age and weight that would allow an inexperienced dog owner to provide proper care for the puppy without need for extraordinary effort.

The trial court provided no legal rationale for creating this warranty. The trial court did not find that any of the definitions of merchantability contained in R.C. 1302.27(B)(1) through (6) had been breached. Rather, the trial court relied upon a magazine article which referred to a code of ethics that required breeders to keep a puppy until it was 12 weeks old. The court went on to find that since appellant had sold the puppy when it was eight weeks old, she had breached an implied warranty. We disagree.

{¶ 15} Initially, we note that there is no basis in law for the trial court's creation of the above implied warranty. R.C. 1302.27 specifically details the elements required to find that a good is merchantable and the trial court did not attempt to find that the sale of the puppy at such a young age violated any of

these provisions. Accordingly, we presume that the trial court relied upon R.C. 1302.27(C) which provides:

> Unless excluded or modified as provided in section 1302.29 of the Revised Code, other implied warranties may arise from course of dealing or usage of trade.

While R.C. 1302.27(C) permits other implied warranties to be established, the trial court received no evidence regarding a "course of dealing" or "usage of trade."

■ {¶ 16} Furthermore, assuming that the trial court's warranty was applicable, we note that the trial court received no evidence that appellant had breached such a warranty. Prior to selling appellee the puppy, appellant explained the health issues inherent in such a small puppy, detailed the specific care that appellee would need to provide, and provided appellee with the dietary supplements needed for the puppy. While the puppy did need specific care, there is no indication that providing proper care for the puppy required an "extraordinary effort."

{¶ 17} Accordingly, the trial court erred in finding that appellant had breached an implied warranty. Appellant's first, second, and third assignments of error, therefore, are sustained.

### ASSIGNMENT OF ERROR IV

> The trial court erred in refusing to find that the puppy died of hypoglycemia and starvation when the only expert evidence adduced at trial was that of two (2) veterinarians who both concluded that was the cause of its death.

■ {¶ 18} In her fourth assignment of error, appellant contends that the trial court erred in finding that she had not proven that the puppy died from hypoglycemia. We agree.

{¶ 19} The purchase agreement contained the following pertinent provision:

> Hypoglycemia (low blood sugar) is a serious health problem, usually caused by stress, to (sic) much activity, or to (sic) little food and is within your control, and is not covered by this warranty.

The trial court held that the above clause was not determinative, finding as follows:

> The parties did, by the terms of the contract, agree that [appellee] was to be responsible for hypoglycemia in the puppy. Therefore, if the puppy died from hypoglycemia, * * * then [appellant] would prevail. [Appellant] has the burden to prove that the puppy died of hypoglycemia.

The trial court went on to note that appellant had failed to meet her burden because she had not produced a necropsy report and had not preserved tissue samples of the puppy. The court noted that "[s]ince it is [appellant's] burden to prove the affirmative defense, [she] should have produced either a copy of the necropsy report and/or subpoenaed the veterinarian." We find that the trial court erred.

{¶ 20} As noted above, we will not reverse the trial court's judgment if it is supported by some competent, credible evidence. *Morris* at ¶ 18. The trial court's finding that appellant had not produced sufficient evidence is not supported by the record. Appellant introduced a letter from her veterinarian which concluded that since the puppy's stomach and upper gastrointestinal tract were empty, the "cause of death was most likely hypoglycemia." Additionally, appellant introduced the records of appellee's veterinarian which indicated a diagnosis of "hypoglycemic, open." No other evidence of the puppy's cause of death was introduced.

■ {¶ 21} The trial court cited no authority and this court has found no authority for the proposition that appellant was required to subpoena her veterinarian in order to verify the cause of death listed in the documents she submitted. The small-claims division of a municipal court "is a 'layman's forum' and a judge or referee, while exercising some discretion, ' * * * should not deny a layman justice through the formalistic application of the law of evidence.' " *Ashley v. Gregg Engine & Machine* (Sept. 13, 1995), 9th Dist. No. 17091, 1995 WL 542200, at *2, quoting *Turner v. Sinha* (1989), 65 Ohio App.3d 30, 33, 582 N.E.2d 1018. Accordingly, we find that the trial court erred in refusing to rely upon the sole evidence presented before it and requiring appellant to introduce further evidence. Appellant produced evidence as to the cause of death of the puppy from two veterinarians. Such evidence was unrebutted and satisfied appellant's burden and demonstrated that more likely than not the puppy died from hypoglycemia. The trial court erred, therefore, in finding that appellant was liable under the contract when the contract expressly excluded hypoglycemia under its guarantees. Appellant's fourth assignment of error is sustained.

### ASSIGNMENT OF ERROR V

The trial court erred by refusing to apply the specific limitation of remedies and limitation of damages in this contract of sale, despite the fact that these terms were a clear part of the contract of the parties.

{¶ 22} Based upon this court's resolution of appellant's first four assignments of error, appellant's fifth assignment of error is moot and we decline to address it. App.R. 12(A)(1)(c).

### III

{¶ 23} Appellant's first, second, third, and fourth assignments of error are sustained and this court declines to address appellant's fifth assignment of error. The judgment of the Oberlin Municipal Court is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WHITMORE, P.J., and BOYLE, J., concur.