OPINION
{¶ 1} Appellant, Conni Lawrence, d.b.a. Summer Wind Stables, appeals the September 15, 2006 judgment entry of the Geauga County Court of Common Pleas, granting and awarding judgment on the jury verdict for appellees, Aaron K. Horch, D.V.M. ("Dr. Horch") and Lauren A. Wade, D.V.M. ("Dr. Wade"). Appellant additionally *Page 2 
appeals the November 7, 2005 judgment entry, granting summary judgment in favor of appellees, Big Creek Veterinary Hospital, L.L.C. ("Big Creek") and Eric F. Neate, D.V.M. ("Dr. Neate"), as well as Joel W. Percival, D.V.M. ("Dr. Percival"). The trial court dismissed Big Creek, Dr. Neate, and Dr. Percival from the litigation. The trial court further ordered that summary judgment as to Dr. Horch and Dr. Wade was denied. Lastly, appellant appeals the September 12, 2006 judgment entry, granting Dr. Horch's and Dr. Wade's motion in limine as to informed consent, and denying their motion in limine as to damages.
 {¶ 2} On November 10, 2004, appellant filed a complaint for professional veterinary negligence against Big Creek, s.a. Dr. Percival, Dr. Horch, Dr. Neate, and Dr. Wade. Big Creek, s.a. Dr. Percival, Dr. Horch, Dr. Neate, and Dr. Wade filed a joint answer on December 6, 2004.
 {¶ 3} On July 15, 2005, Big Creek, s.a. Dr. Percival, Dr. Horch, Dr. Neate, and Dr. Wade filed a motion for summary judgment pursuant to Civ.R. 56. On October 14, 2005, appellant filed a motion in opposition to the motion for summary judgment. On October 24, 2005, Big Creek, s.a. Dr. Percival, Dr. Horch, Dr. Neate, and Dr. Wade filed a reply.
 {¶ 4} Pursuant to its November 7, 2005 judgment entry, the trial court found that the claims against Dr. Percival and Dr. Neate were not viable because they had no connection to the claimed professional negligence. The trial court granted summary judgment in favor of Big Creek, Dr. Neate, and Dr. Percival, and dismissed them as defendants. In addition, the trial court denied summary judgment as to Dr. Horch and Dr. Wade. *Page 3 
 {¶ 5} On September 5, 2006, Dr. Horch and Dr. Wade filed two motions in limine. The first motion requested exclusion of all evidence of damages to appellant's horse. The second motion sought exclusion of all evidence related to the issue of informed consent requirements imposed upon veterinarians. Appellant filed briefs in opposition to both motions in limine.
 {¶ 6} Pursuant to its September 12, 2006 judgment entry, the trial court granted Dr. Horch's and Dr. Wade's motion in limine as to informed consent, and denied their motion in limine as to damages.
 {¶ 7} The case proceeded to a jury trial against Dr. Horch and Dr. Wade on September 12, 2006.
 {¶ 8} The facts pertinent to this appeal are as follows: on Monday, May 17, 2004, appellant retained Dr. Horch to perform routine veterinary services for several of her horses stabled at her farm in Chesterland, Ohio. Dr. Horch, accompanied by an assistant, Erin Wiegand, was asked to clean the sheath and float the teeth of Black Jack, the eighteen-year-old horse at issue. Dr. Horch testified that Black Jack was sedated, which was accomplished by the administration of Xylazine, acepromazine, and Torbugesic. He gave Black Jack about five minutes for the drugs to take effect. Dr. Horch then cleaned Black Jack's sheath and floated his teeth, which took approximately thirty minutes. Dr. Horch testified he observed Black Jack's penis retract back into its sheath, and he moved on to work on another horse in the barn. Appellant was not present during the foregoing veterinary services. Black Jack suffered priapism (persistent erection) resulting in necessary amputation. *Page 4 
 {¶ 9} Both appellant and her husband, Clay Lawrence, first discovered that Black Jack's penis was swollen during the morning on Saturday, May 22, 2004. Appellant testified that she telephoned Dr. Horch's colleague, Dr. Wade, during the early afternoon that day. Dr. Wade indicated that she would examine Black Jack later that afternoon following an emergency call, but that appellant would have to pay an emergency call fee. Dr. Wade testified that appellant told her not to come. Dr. Wade stated that she told appellant that she would be on call all weekend, until 8:00 a.m. Monday morning, and that if she had problems or concerns she should call her. Dr. Wade testified that appellant contacted her and scheduled an appointment during the morning on Wednesday, May 26, 2004. Dr. Wade made the farm call that day.
 {¶ 10} According to Dr. Wade, she first performed a physical examination on Black Jack. Based upon that exam, Dr. Wade diagnosed the horse with having penile paralysis (paraphimosis). She discussed the possible causes, which included trauma, allergic reaction, and possible reaction to acepromazine. Dr. Wade presented the option of continuing therapy as well as suggested that Black Jack be referred to The Ohio State University Veterinary Hospital ("Ohio State") for evaluation.
 {¶ 11} On June 1, 2004, Black Jack was admitted to Ohio State. The horse was diagnosed with priapism (persistent erection), and the cause could not be determined. On June 3, 2004, Black Jack underwent a partial phallectomy and was released on June 15, 2004. The horse had a positive prognosis for a full recovery.
 {¶ 12} Walter Threlfall, D.V.M. ("Dr. Threlfall"), Professor and Head of Theriogenology at Ohio State, testified for appellant that he believed that Dr. Horch and Dr. Wade committed malpractice. He indicated, however, that if Black Jack's penis had *Page 5 
retracted thirty minutes or so following the administration of acepromazine by Dr. Horch on May 17, 2004, then the horse's priapism and paraphimosis must have been caused by something other than the acepromazine.
 {¶ 13} Dr. Horch's and Dr. Wade's expert, Dr. Deborah Wilson ("Dr. Wilson"), a veterinarian, anesthesiologist, and an associate professor at Michigan State University, College of Veterinarian Medicine, also testified that if Black Jack's penis was observed to retract shortly after Dr. Horch administered the acepromazine, then that drug would have to be excluded as a possible cause of subsequent problems relating to its penis.
 {¶ 14} On September 14, 2006, the jury returned a verdict in favor of Dr. Horch and Dr. Wade. Pursuant to its September 15, 2006 judgment entry, the trial court granted and awarded judgment on the jury verdict in favor of Dr. Horch and Dr. Wade.
 {¶ 15} It is from the foregoing November 7, 2005, September 12, 2006, and September 15, 2006 judgment entries that appellant asserts the following assignments of error on appeal:
 {¶ 16} "[1.] The trial court erred to the prejudice of the Appellant by granting Appellees' motion in limine prohibiting evidence to be presented regarding informed consent to be given by veterinarians.
 {¶ 17} "[2.] The trial court erred to the prejudice of the Appellant by granting summary judgment in favor of Appellees Big Creek Veterinary Hospital, L.L.C. and Eric F. Neate, D.V.M.
 {¶ 18} "[3.] The verdict of the jury should be overturned based upon the weight of the evidence and/or sufficiency of the evidence doctrines." *Page 6 
 {¶ 19} In her first assignment of error, appellant argues that the trial court erred by granting Dr. Horch's and Dr. Wade's motion in limine prohibiting evidence to be presented regarding informed consent to be given by veterinarians.
 {¶ 20} "`In order to establish negligence by a veterinarian, a party must show "that the injury complained of was caused by the doing of a particular thing that a veterinarian of ordinary skill, care and diligence would not have done under like or similar circumstances, or by the failure or omission to do some particular thing that such veterinarian would have done under like or similar circumstances."'"Diakakis v. W. Res. Veterinary Hosp., 11th Dist. No. 2004-T-0151,2006-Ohio-201, at ¶ 13, citing Lewis v. Hendrickson, 4th Dist. No. 02CA18, 2003-Ohio-3756, at ¶ 14, quoting Turner v. Sinha (1989),65 Ohio App.3d 30, 35.
 {¶ 21} The Supreme Court of Ohio in Nickell v. Gonzalez (1985),17 Ohio St.3d 136, syllabus, stated:
 {¶ 22} "[t]he tort of lack of informed consent is established when:
 {¶ 23} "(a) [t]he physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
 {¶ 24} "(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
 {¶ 25} "(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." *Page 7 
 {¶ 26} "The doctrine of informed consent is based on the theory that every competent human being has a right to determine what shall be done with his or her own body." Ullmann v. Duffus, DVM, 10th Dist. No. 05AP-299, 2005-Ohio-6060, at ¶ 27, citing Siegel v. Mt. Sinai Hosp.
(1978), 62 Ohio App.2d 12. In Ohio, the general definition and elements of "informed consent" have traditionally been applied to the physician-patient relationship. See, e.g., Nickell, supra. Like the Tenth District, our research reveals no case in which an Ohio court has recognized the tort of lack of informed consent against a veterinarian. See Ullmann, supra, at ¶ 27. Both Dr.Threlfall and Dr. Wilson testified that if Black Jack's penis had retracted thirty minutes or so following the administration of aceptomazine by Dr. Horch on May 17, 2004, then the horse's priapism and paraphimosis must have been caused by something other than the acepromazine. However, Ohio precedent does not preclude application of the informed consent doctrine to other medical professionals, including veterinarians.
 {¶ 27} In Ullman, the Tenth District held that, when alleging breach of professional care and/or negligence against a veterinarian, expert testimony is required to establish what the claimed undisclosed material risks and dangers are, and if disputed, whether those particular undisclosed risks did, in fact, materialize and cause the patient's injuries. The court found that expert testimony is necessary to establish the significant risks which would have been disclosed to support the plaintiff's claim since the probability and magnitude of those risks is a matter of medical judgment beyond the knowledge of a lay person. In that case, the plaintiff's lack of expert testimony was fatal to a claim of lack of informed consent, and the veterinarian was entitled to judgment as a matter of law. Id. at ¶ 28. *Page 8 
 {¶ 28} In this case, appellant had an expert testify as to the issues and claims. Accordingly, preventing appellant from offering such testimony was reversible error. Moreover, appellees had full opportunity to cross-examine and present contrary evidence relating to "informed consent" and all other issues and claims.
 {¶ 29} Dr. Threlfall testified that the insert in the box of acepromazine indicates a warning not to use, or be very cautious, in male horses. He further indicated that as a standard practice, a horse owner or caregiver would not see this insert upon the administration of acepromazine. Appellant proffered through attempted testimony as to whether a veterinarian does and/or should advise the "client" of the likely side-effects of such drugs, and obtain consent to their administration. Dr. Threlfall opined that an owner should be aware of risks and likely side-effects prior to administration. In conformance with its ruling, the trial court would not allow such testimony.
 {¶ 30} Based upon failure to inform appellant of the potential risks associated with administering acepromazine to a male horse, inter alia, Dr. Threfall testified that appellant failed to comply with the applicable standards of veterinary care demanded of practicing Ohio veterinarians, possessing similar education, training and experience, and practicing veterinary medicine under like or similar circumstances. The informed consent doctrine is not codified in Ohio. However, such practice is clearly indicative of the veterinarian's duty of care. This is an evidentiary issue that goes directly to the standard of care in a malpractice case. Finally, we note that experts should also be able to testify regarding this standard, as it goes to the central issue of compliance with professional conduct. Informed consent is part of and necessary to a veterinarian's duty of care. *Page 9 
 {¶ 31} In this case, there were warnings and risks associated with the drug and included in the packaging by the manufacturer. Black Jack was not used for stud but agrarian purpose, he was the means to the farmer's livelihood. The veterinary field, according to the appellant's expert, requires, pursuant to their code of conduct, that prior to treatment of animals, owners of livestock be informed as to the risk of that treatment. The owner of livestock is entitled to know the risk of harm to his property before he consents to administering drugs rendering the livestock commercially useless. Veterinary malpractice is similar to that of doctors; the professional qualifications and licensure is of similar rigor, due to the current and historical importance of farming and agriculture to our society and our food supply. There is no presently recognized tort of failure to give informed consent to animals, only people — but this is not the question presently before us on this appeal. It is clear that the trial court improperly granted Dr. Horch's and Dr. Wade's motion in limine.
 {¶ 32} Appellant's first assignment of error is with merit. However, due to our disposition of the remaining assignments of error, particularly the third, this error was harmless.
 {¶ 33} In her second assignment of error, appellant contends that the trial court erred by granting the motion for summary judgment.
 {¶ 34} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 35} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such *Page 10 
evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 36} The Ohio Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296:
 {¶ 37} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 38} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id. *Page 11 
 {¶ 39} The law favors a citizen's right to trial by jury except in cases where reasonable minds can come to but one conclusion. One must, if intellectually true to the Civ.R. 56 analysis, assume as true all facts in evidence on behalf of the non-moving party. Summary judgment is not a case management tool to be utilized by trial courts, but must be used sparingly. The trial court may not engage in a weighing of the evidence or a determination of whether a party may be successful at trial in meeting its ultimate legal burden. Once evidence is presented by the non-moving party as to any element of the claim, the final determination of whether a plaintiff or defendant is ultimately successful lies in the exclusive control of the finder of fact at trial.
 {¶ 40} In the instant matter, appellant cites to the following cases in support of her argument that the legal doctrine of respondeat superior applies here: Richardson v. Doe (1964), 176 Ohio St. 370;Steinmetz v. Francis D. Lowry, D.D.S. Assoc, Inc. (1984),17 Ohio App.3d 116; and Berdyck v. Shinde (1993), 66 Ohio St.3d 573. We note that both Richardson and Berdyck involved nurses, and Steinmetz involved a dentist. Thus, appellant's reliance on those three cases is misplaced, since none of them involve a veterinarian.
 {¶ 41} Although individual veterinarians can be held liable for professional negligence, Ohio courts have not applied the doctrine of respondeat superior to impose secondary liability upon a veterinarian's chosen business form. See, e.g., Southall v. Gabel (1971),28 Ohio App.2d 295; and Hitchcock v. Conklin (1995), 107 Ohio App.3d 850.
 {¶ 42} The trial court properly granted summary judgment in favor of Big Creek, Dr. Neate, and Dr. Percival. *Page 12 
 {¶ 43} Appellant's second assignment of error is without merit.
 {¶ 44} In her third assignment of error, appellant alleges that the jury's verdict should be overturned based upon the weight and/or sufficiency of the evidence.
 {¶ 45} "* * * [Judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279 * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77
* * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross (1980), 64 Ohio St.2d 203 * * *." Gerijo, Inc.v. Fairfield (1994), 70 Ohio St.3d 223, 226. (Parallel citations omitted.)
 {¶ 46} In the case sub judice, again, appellant's expert, Dr. Threlfall, testified that he believed that Dr. Horch and Dr. Wade committed malpractice. Dr. Threlfall stated it would be unusual for a horse to have its penis retract within thirty to forty minutes, unless the horse was stimulated in some manner. Dr. Wade testified that performing a tooth floatation, which Dr. Horch did immediately following the sheath cleaning, provides sufficient stimulation to a horse to enable it to retract its penis. However, Dr. Threlfall said that he could not contradict Dr. Horch's observation that Black Jack's penis retracted within approximately thirty minutes since he was not present. The evidence established swelling and inflammation was detected on Saturday, Mary 22, 2004, five days after the administration of the acepromazine.
 {¶ 47} Appellant's third assignment of error is without merit. *Page 13 
 {¶ 48} The judgment of the Geauga County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concur,
 DIANE V. GRENDELL, J., concurs in judgment only. *Page 1